JAMES H. TUTTLE, ADM'R v. TURNER, WILSON & CO.

The true test of the interest of a witness is that he will either gain or lose by the direct legal effect and operation of the judgment to be rendered in the cause wherein he testifies, or that the record of the judgment will be evidence for or against him in some other action.

When a witness testifies against his interest, the rule that interest disqualifies has no application.

Where a warrantor of a title to land is introduced (in an action which seeks to set aside his deed for fraud) as a witness to prove the invalidity of the title warranted by him, he is a competent witness, inasmuch as the effect of his testimony is to render him liable on his warranty, and he is therefore testifying against his interest.

Such warrantor is competent, notwithstanding that the invalidity in the title, as proved by him, consisted in collusive fraud between him and the grantee in his deed, on account of which fraud no action on the warranty could be sustained by the grantee against the warrantor, because the record of the judgment in the cause wherein the warrantor testifies would not be admissible in a suit on the warranty, except as evidence of the facts of its rendition and of its necessary legal consequences, in which respects it would be against the interest of the witness.   It would not be admissible in his favor as evidence of the fraud, by which he would be exonerated from liability to his grantee upon the warranty.

Whenever an act of an agent is admissible in evidence, his statements relative to the act and made while doing it are also admissible as part of the *res gesta*.

It is a well settled rule of law, that when parties to the record have a joint interest in the matter in suit, or there is a privity in design between them, an admission by one is in general evidence against all.

An instruction that if the deed were without consideration, and made with intent to defraud creditors, it remains subject to the grantor's antecedent debts, is correct.   (Paschal's Dig., Art. 3876, Note 906.)

A purchaser of land, pending an attachment upon it, is charged with notice of the attachment lien and of the rights of the attaching creditors in the land from the date of the levy, and can hold against the creditors only such rights in the land as his vendor could have maintained, and the fact that the purchaser had no actual notice, at the time of his purchase, that the land had been attached, is immaterial. (Paschal's Dig., Art. 149, Note 262.)

A deed takes effect only from the date of its delivery, and the delivery may be either actual or constructive. If a deed be not actually delivered to the grantee or his authorized agent, it is essential to its validity to prove notice to the grantee of its execution, and such additional circumstances as will afford a reasonable presumption of his acceptance of it. The presumption that a grantee will accept a deed because it is beneficial to him will never, it is said, be carried so far as to consider him as having actually accepted it. (Paschal's Dig., Art. 1000, Note 422.)

Possession of a deed by the grantee raises a presumption of its due delivery to him; but this presumption may be rebutted by proof.

In a case of conflicting testimony, the judgment will not be reversed merely because the proof on which the verdict was based was meagre and unsatisfactory. Unless clearly wrong, the verdict in such a case will not be disturbed in this court. (Paschal's Dig., Art. 1470, Note 566.)

APPEAL from Grayson. The case was tried before Hon. NAT. M. BURFORD, one of the district judges.

On the 10th of June, 1856, the appellees, who were a mercantile firm of New Orleans, Louisiana, brought this suit to recover of Warrick Martin, who was a resident of the State of Mississippi, the amount due upon his note dated July 3, 1854, to the plaintiffs, for the sum of $10,467 and interest, and to subject to payment thereof the undivided half interest of said Martin in sundry tracts of land, comprising over twenty thousand acres, which interest they attached upon affidavit of the non-residence of Martin. Thomas B. Lincoln and J. Blodget Britton, both non-residents of the State, were also made defendants.

After charging the indebtedness of Martin, and describing the various tracts of land, the original petition alleges that the lands were located by one B. F. Hall in his own name, but that an undivided half interest was owned by the said Martin, and that Hall had transferred and con-

veyed his half interest to one Huffman, who thus became the joint owner with Martin of the whole of the lands; that on the 27th of May, 1854, Martin, for the purpose of defrauding petitioners, and to prevent them from making their said debt out of the lands, combined and confederated with Lincoln to induce Hall to execute to Lincoln a power of attorney, empowering Lincoln to sell and dispose of the entire interest in the said land, inclusive of said Martin's interest as well as Hall's, in whom the legal title had remained up to that time; that on the 11th of August, 1854, Lincoln, by virtue of his power of attorney from Hall, conveyed Martin's half interest in the land to J. Blodgett Britton; and subsequently, on the 19th of August, 1854, conveyed Hall's interest to said Huffman for the consideration of $1 25 per acre. And petitioners charge, that although Lincoln's deed, as agent, to Britton purports on its face to be in consideration of $5,000, yet in fact it was made without any consideration whatever from Britton to Lincoln, Hall, or Martin, and that it and the whole transaction was a fraud upon petitioners, as creditors of Martin, to prevent them from making their debt out of the land. They, therefore, charge that the power of attorney from Hall to Lincoln, and the deed from Lincoln, as agent of Hall, to Britton, were fraudulent and void, and that the equitable title to lands conveyed to Britton remains in Martin. They pray that the power of attorney to Lincoln, in so far as it affected Martin's interest, might be canceled; that Huffman's rights as to Hall's own portion be protected; that the deed to Britton from Hall by Lincoln, as his agent, be set aside as fraudulent and void; and that Martin's half interest be decreed subject to petitioners' demands and be sold for payment thereof.

The writ of attachment issued on the 11th of June, 1856, and was levied the same day on one undivided half, of the land in controversy, as the property of the defendant, Martin.

At the spring term, 1857, judgment by default was taken against the defendant, Martin.

At the fall term, 1857, Isaac Johnson, the intestate of the appellant, filed his petition of intervention, claiming to be owner of the entire interest attached as the property of Martin. He disclaimed any knowledge of the indebtedness of Martin to the plaintiffs, and also of the fraud and collusion charged by the plaintiff against Martin, Lincoln, and Britton. But he represented that plaintiffs ought not to have judgment annulling the power of attorney from Hall to Lincoln, nor setting aside the deed from Lincoln to Britton, nor declaring the land subject to the claim of the plaintiffs against Martin, because, he alleges, neither said Martin, Lincoln, nor Britton, has now, nor at the commencement of this suit did have, any right, title, or interest, legal or equitable, in or to the said lands, or any part of the same; that this intervenor, on the 15th of January, 1855, purchased all the right, title, and interest, of every kind, in the said lands, which either said Martin, Lincoln, or Britton had in or to the same; and that since the date last mentioned he, this intervenor, has been and still is the legal and equitable owner of the same, as will appear by reference to the following papers and muniments of title, viz: power of attorney from Hall to Lincoln, dated March 27, 1854; deed from Martin to Lincoln, dated July 3, 1853; deed from Hall, by his agent, Lincoln, to J. Blodget Britton, dated August 11, 1854, and deed from Britton to this intervenor, dated January 15, 1855.

The intervenor further avers and charges, that, if there were any fraud or collusion between the defendants, or any of them, to the wrong, injury, or detriment of the plaintiffs, or any other creditors of Martin, this intervenor had no notice thereof, nor did he ever hear charges of that character brought against the defendants until long after the institution of this suit. He further avers, that he is a purchaser in good faith, for a valuable consideration paid

to said Lincoln, that this suit is a cloud on his title to the lands in controversy, and he therefore prays that it be removed, and for general relief.

At the spring term, 1858, the plaintiffs amended, and charged that, at the time of the execution of Hall's power of attorney to Lincoln, Martin was indebted to them by open account for acceptances, &c., in the sum for which his note of date July 3, 1854, was subsequently given; and they reiterate their charge, that the said power of attorney was made for the purpose of covering up Martin's interest in the lands, so as to prevent plaintiffs from making their said debt.   They repeat their charge, that the deed from Lincoln, as agent of Hall, to Britton, was without consideration, and was fraudulent; and they further charge, that the deed from Britton to Johnson, set up by the latter in his petition of intervention, was likewise executed without consideration, and for the same fraudulent purpose; that Britton and Johnson had full notice at the time of the making of said deeds of the said fraudulent purpose of the same; that at the time the deed from Martin to Lincoln, also relied upon by the intervenor, was executed, the said Martin was indebted as aforesaid to the plaintiffs, as was well known to Lincoln at that time, and that said deed was executed in fraud of their rights; and they charge that all of the deeds and instruments relied upon by the intervenor were fraudulent and void.

At the spring term, 1859, the death of the intervenor, Johnson, was suggested, and process ordered for the appellant, Tuttle, as his administrator, who appeared and became a party.

At the fall term, 1859, the plaintiffs again amended. They alleged that the indebtedness of Martin to them was incurred on the 3d of March, 1853, by means of their acceptances for him, and which they paid, and that the note of Martin was given to close up the indebtedness thus incurred.   They further state, that since the commence-

ment of this suit the lands in controversy had been partitioned by another action in this court between Huffman and Martin, Johnson and others, and the proceedings therein are made part of this petition. And they charge that the pretended purchase of Johnson, under which he claimed, was not made on the day in January, 1855, alleged by him, but, if ever it was made, its true date was on or about the 17th of November, 1856, which was long after the plaintiffs had brought this suit and levied their attachment upon the lands. They repeat their charges of fraud, and allege that Martin had been insolvent ever since the 6th day of July, 1853, which was well known by Johnson when he made his pretended purchase, and also by Lincoln and Britton. That at the time Johnson made his purchase, to wit, on the 17th or 18th of November, 1856, he had full notice of the pendency of this suit, as well as of Martin's indebtedness to plaintiffs; that Lincoln had previously obtained the deed to be signed by Britton, and had kept it in his possession until the 17th or 18th of November, 1856, when, for the first time, he negotiated the pretended sale to Johnson.

There were motions to quash the attachment proceedings, and various exceptions to pleadings interposed by the different parties before the case came to trial, but as they are not discussed in the opinion of this court they need not be particularly noticed here.

The cause came to trial at the fall term, 1859. The statement of facts, being full of repetitions, is very voluminous, but it is deemed necessary to notice only so much of the evidence as is discussed in the opinion.

The plaintiffs introduced B. F. Hall as a witness to prove the allegations of fraud contained in their petitions. The intervenor objected, " because said Hall is interested in favor of plaintiffs in said suit, in this, that the deed from said Hall, by his agent, Lincoln, to said J. Blodget Britton, intervenor's vendor, is a deed of general warranty, and

if the plaintiffs recover in this suit, said Hall is released from the warranty contained in his said deed." The objection was overruled, and the intervenor excepted.

Hall testified, that in the year 1849 he entered into a written contract with the defendant, Martin, to locate lands in Texas. Witness identified the paper shown him as the contract between him and Martin, and it was read as evidence. It was an agreement by Martin to furnish the cash for the purchase of land claims, and by Hall, at his own expense, to select and locate the lands, clear out the titles, obtain the patents, and to sell enough of the lands to reimburse the outlays, and also to sell as much more as he thought proper. The lands were to be the joint property of Martin and Hall, and the profits to be equally divided between them. The witness stated that at the time this contract was made Martin told him that he was embarrassed in money matters and wanted the lands to fall back on; that he wanted to furnish witness money to buy the land claims, and for witness to go to Texas and locate them, taking all the transfers in witness' name; that witness accepted the proposition, entered into the contract, received from Martin the money, laid it out in land certificates, and located them on the tracts described in the plaintiff's petition, and upon other lands not now in controversy; that Martin bound witness to take all the titles in his, witness', name, giving as a reason, that he did not wish them to appear on the records in his own name. Witness saw Martin in April, 1853, and he was then still embarrassed, and again saw him for the last time in June, 1853, at which time he was still embarrassed, and told witness he was broke. A power of attorney from Martin to Lincoln, dated April 28, 1854, was here shown to the witness, who stated that it was executed by Martin, and was handed to witness in May, 1854, by Lincoln, who until then was a stranger to witness. This power of attorney fully authorized Lincoln to adjust and close up

with Hall all of Martin's interest in their joint lands in Texas.  Witness stated that Lincoln also brought him a letter of introduction and commendation from Martin, and represented to him that Martin was embarrassed, and had nothing to fall back on but the lands; that Lincoln urged witness to give him a power of attorney to sell the entire interest in the lands; that witness hesitated to, do so, but on the next morning concluded on doing so for the acommodation of Martin, as Lincoln told him that the lands were still Martin's, and that Martin had failed, and had employed him, Lincoln, to get him out of his difficulties; that witness made his power of attorney to Lincoln, being influenced thereto by his sympathy for and gratitude to Martin; that at the same time he made a written contract with Martin, which he now identifies.  This contract refers to the power of attorney, and also in general terms to the lands, of which it says one-half are owned by Hall, and the other half by Lincoln, and binds Lincoln not to sell Hall's portion for less than $1 25 per acre, and to account to Hall for the proceeds.  Witness stated that Lincoln did all the writing; that he did not read this contract to witness, and that witness did not know that it contained an acknowledgment that Lincoln was the owner of the lands. He further stated, that the lands were worth $3 per acre in the year 1856.

In the course of the foregoing testimony, the defendants and intervenor objected to the witness stating what was said by Lincoln to him with regard to Martin's solvency or insolvency, which statements of Lincoln were made at the time Lincoln produced his power of attorney from Martin.  The objections were, that the testimony was irrelevant, that it was hearsay, that the other defendants were not bound by Lincoln's statements, and that Lincoln himself was a better witness as to his statements.  The objections were overruled, and the defendants and intervenor again excepted.

The written instrument from Lincoln to Martin, referred to in the opinion, was as follows:

"NEW ORLEANS, *July* 6, 1853.

"I have this day received from Warrick Martin a memorandum agreement, binding himself to convey to me certain lands in Texas, as therein more fully described; and I hereby declare that said Martin is entitled to receive from sales of said lands the sum of $3,000 first, after which he is to share with me the proceeds from sales, each receiving an equal portion—being the lands located by B. F. Hall, in Grayson and Dallas counties, Texas.

"Witness my hand and seal, date as above written.

"THOMAS B. LINCOLN.   [SEAL.]"

To the admission of this instrument, when offered by the plaintiffs, the defendants and intervenor objected that it was never recorded; that no notice has been brought home to intervenor, Tuttle, or his intestate, Johnson; that the instrument is but a private paper, and comes from the possession of the plaintiffs; and that "the testimony of Lincoln would be better testimony, who was permitted to testify, but was not interrogated as to said paper." The objections were overruled, and the intervenor excepted.

The other facts are sufficiently indicated in the opinion of the court. The controversy turned principally upon the time of the execution of the deed by Britton to Johnson, or whether, indeed, it were actually delivered at all. It bore date before the levy of the attachment; but it was denied that this was the true date. It was not recorded until 1857. There was conflict as to the facts. The question might have been made one of good faith as to Johnson, but was not, and he got the benefit of the pure question of priority of right. The instructions followed our statute of frauds.

There was a verdict for the plaintiffs and a decree accordingly for the sale of the lands allotted to Martin in satisfaction of the judgment. The intervenor, Tuttle,

moved for a new trial, which was refused, and he appealed.

*John J. Good*, for appellant.—Appellees seek to subject to sale the lands in controversy on three grounds:

I. Because the sales were to cheat, wrong, and. defraud them as creditors of Warrick Martin.

II. Johnson was a purchaser *lis pendens.*

III. There was no consideration for the deed to Lincoln, Britton, or Johnson, and the latter holds them in trust for Martin.

I will discuss these grounds in the order presented.

1. To establish that these sales were in fraud of appellees' rights as creditors of Martin, they must prove, first, an indebtedness from Martin to them at the date of sale; second, a sale to defraud them; and, third, notice of these facts on Johnson.

The deed from Martin to Lincoln bears date July 6, 1853. At this time Martin was solvent.

It is respectfully submitted, that acceptances are not indebtedness, and the acceptance is no evidence that appellees were creditors of Martin at the date thereof. (Bouv. Law Dic., tit. INDEBTEDNESS.)

Payment of the acceptances would make them creditors, but then only from the date of payment, and of this there was no evidence.

It is admitted that appellees were the creditors of Martin from the date of the note sued on, July 3, 1854. This was nearly one year after the date of Lincoln's deed from Martin, and could not affect the property in his hands. It certainly could not then affect the property in the hands of Johnson, who had no notice of Martin's indebtedness at the date of any of the deeds, nor that the object of any of the sales was to defraud appellees.

Appellees must prove these facts before they can recover on this allegation. (Barnes v. Jamison, 24 Tex., 362.)

2. The only evidence, if it can be so digified, that Johnson was a purchaser *lis pendens,* is a brace of eavesdroppers. One of these says, in his first deposition, he does not know appellant's intestate. In his second, without any explanation, he does. (Greenl. on Ev., § 462.)

The evidence of their falsity, it seems to me, is overwhelming. Johnson had discharged the notes of Stewart & Co., for $6,178 73. The deed to him was made, executed, and acknowledged January 16, 1855. It was delivered to Johnson, and here, four months before these conversations, April 30, 1857, he was asserting his title to these lands, by motion to intervene in the suit for partition brought by Huffman and in this cause.

3. There can be no doubt of the consideration paid by Lincoln, nor of the consideration from Johnson.

*Johnson & Townes,* also for appellant.

*Hancock & West,* for the appellees, insisted that the statement of facts did not conform to the requirements of the statute, citing 22 Tex., 544; 1 Id., 855; Rules of Supreme Court, No. 15, and Sayles' Practice, 390. They discussed the evidence, and as to Hall's competency cited Dikes v. Miller, 24 Tex., 417.

COKE, J—There was no error in the admission of the testimony of the witness, B. F. Hall. The objection, that he was incompetent by reason of interest, is not well taken. The true test of the interest of a witness is, that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be evidence for or against him in some other action. (1 Greenl. on Ev., § 390.)

Nor does the rule, that interest disqualifies, apply where a witness testifies against his interest. Hall, the witness, conveyed the lands in controversy to J. Blodget Britton

by deed, containing a clause of general warranty. Britton, by quit-claim deed, conveyed the lands to the appellant's intestate. Hall's testimony was introduced by the appellees to prove the invalidity of the appellant's title, of which Hall was the warrantor. The effect of his testimony was to render Hall liable on his warranty. Then, so far as his interest is to be affected by the result of this suit, Hall testified against that interest. The record of the judgment in this case would be admissible for a breach of his covenant of warranty in a suit by Johnson against Hall, as evidence of the fact of its rendition and of its necessary legal consequences, which again would be against Hall's interest, by showing the fact and extent of appellant's eviction. (Young v. Vredenburg, 1 Johns., 159; 2 Serg. & Rawle, 415; 1 Greenl. on Ev., §§ 538, 539.)

It is said though, that by his testimony Hall proves that his deed to Britton was made in pursuance of a combination between himself, Martin, Lincoln, and Britton, to defraud the creditors of Martin, and thereby relieve himself from liability on his warranty, on the principle that *ex turpi contractu non oritur actio.* This position is not tenable, because the judgment would not be admissible in a suit against Hall for breach of his covenant of warranty for any other purpose than to prove the fact of its rendition, and the legal consequences flowing from it. It would not be evidence of any of the facts mentioned, which it is supposed would discharge Hall's liability; they would have to be proved by original evidence, and the judgment would not be admissible for that purpose. Britton has no right of action against Hall for a breach of his warranty. He, by his quit-claim deed, divested himself of his interest, both in the land and in Hall's covenant of warranty. The appellant's intestate alone has the right of action. The injustice of admitting the record of this judgment in Hall's behalf in such an action by the appellant, for the purpose of proving this fraudulent combina-

tion, is manifest. No notice of, or participation in, the fraud is proved on Johnson, and certainly he should not lose his recourse on his warrantor by reason of the fraud of others, in which he did not participate, and of which he had no notice. In no event can the record of the judgment in this case be promotive of Hall's interest; on the contrary, wherever admissible, it will be against his interest.

The objection to the admission of Lincoln's statements, as proved by Hall, in reference to the insolvency of Martin at the time Lincoln presented Martin's power of attorney to Hall, were properly overruled.

Lincoln was Martin's agent, and, from the time he commenced to figure in this business, appears to have been the controlling spirit. The other actors, Hall, Martin, and Britton, seem to have been mere puppets in his hands to do his bidding. Lincoln's statements, made at the time he was Martin's agent, and while he was transacting his business under the power of attorney with Hall, were a part of the *res gesta*, to be proved as any other fact. Whenever what an agent did is admissible in evidence, then it is competent to prove what he said about the act while doing it. (1 Greenl. on Ev., § 113; Story on Agency, §§ 134, 137.)

In addition, Lincoln and Martin are both parties to the record, shown by the proof to have been acting in concert with Hall and Britton in the perpetration of the fraud charged in this case, all moved by a common design, and identified with each other and with Johnson in interest. Lincoln was at one time agent, under powers of attorney, for Hall and Martin, and seems to have had entire control of Britton, at least of his name. It is a well settled rule of law, that where parties to the record have a joint interest in the matter in suit, or there is a privity in design between them, an admission by one is in general evidence against all. (Greenl. on Ev., §§ 111, 112, 174.)

The objections to the admission in evidence of the written instrument executed by Lincoln to Martin were prop-

crly overruled. Its relevancy is not questioned, nor is it objected that its execution is not proved. We presume that its execution was properly proved, and, if so, it was clearly admissible.

There is a general assignment that the court erred in its instructions to the jury, but no specific error is pointed out, and the appellant's counsel in a lengthy argument has not questioned the correctness of the propositions of law they assert, or their applicability to the facts of this case.

We might well decline, under the circumstances, to notice the assignment, but will consider it in connection with the question of the sufficiency of the testimony to support the verdict, which is the only remaining question raised by the assignments of error deemed worthy of consideration.

That there was a combination between Hall and Martin in the first place to defraud the creditors of Martin is clearly shown by the testimony. It is equally clear that Lincoln and his passive instrument, Britton, became privy to and co-workers in this combination. The testimony shows that Martin was in failing circumstances, and resorted to this method of concealing his property from his creditors. He placed these lands first in Hall's hands, afterwards in Lincoln's, who conveyed them to Britton without consideration. No consideration passed to Martin from any of these parties for these lands. The jury were instructed, that if they believed the lands were conveyed to Britton without consideration, or with intent to hinder, delay, and defraud the creditors of Martin, and accepted by Britton with a knowledge of that intent, the lands were liable, as long as they remained in Britton's hands, for Martin's debts. There can be no controversy as to the correctness of this instruction with reference to the facts of this case; that is too plain for serious argument. (Edrington v. Rogers, 15 Tex., 188; Castro v. Illies, 22 Id., 50; Green v. Banks, 24 Tex., 518.)

The sale of the lands by Lincoln and Britton to the appellant's intestate, Johnson, presents the only debatable question in the case, and that is a question of fact as to the date of the consummation of the sale by delivery of the deed.   The record does not show that Johnson had any notice of the invalidity of Britton's title.   But if he purchased after the appellees acquired a lien on the lands by levy of the attachments, his rights are subordinate to theirs. The attachment lien being a prior incumbrance, he takes subject to its prior satisfaction.   Being a *pendente lite* purchaser, he is affected with notice of the rights of the appellees, and takes only what Britton could hold against them. In a word, if Johnson purchased and received his deed after the levy of the attachment in this suit, he stands with reference to the subject-matter of litigation, so far as the appellees are concerned, whatever may be said as to other creditors, precisely in the shoes of Britton.   (1 Story Eq. Juris., §§ 405, 406; 11 Vesey, 194; 1 Johns. Ch., 566; Briscoe v. Bronaugh, 1 Tex., 326.)   And this is the substantial purport of the charge of the court to the jury on this point.   Whether an instruction more unfavorable to the appellant might not have been given, consistently with the law applicable to the case, it is not necessary to determine.   It is sufficient to know, for the purposes of this case, that there is no error in this instruction of which the appellant can complain.   The question of the date of this sale to Johnson, and of the execution and delivery of the deed to him by Britton, was fairly submitted to the jury, and they found in favor of the appellees.

A deed takes effect only from the date of its delivery, which may be either actual or constructive.   It is essential to the operative force and validity of a deed, if not actually delivered to the grantee or his agent authorized to receive it, to prove notice to him of its execution, and such additional circumstances as will afford a reasonable presumption of his acceptance of it.   The presumption

that a party will accept a deed because it is beneficial to
him, it is said, will never be carried so far as to consider
him as having accepted it.    (4 Kent Com., § 454; Hulick
v. Scovill, 4 Gilm., 159.)    But possession of a deed by the
grantee raises a presumption of its due delivery.    (Chand-
ler v. Temple, 4 Cush., 285; Trust Co. v. Cole, 4 Fla.,
359.)    This presumption may be rebutted by proof to the
contrary.    The testimony in the case, as to the date of the
execution and delivery of this deed to Johnson, is meagre
and unsatisfactory.    It must be admitted that the evidence
of the two witnesses, who depose each to a different con-
versation between Johnson and one of the appellees,
(Wilson,) occurring in August, 1857, in Paducah, Ken-
tucky, both of the same tenor, and almost in the same
language, with no person present but one witness to each
conversation, in which Johnson admits, at a time when he
is litigating with the appellees in this suit, their right to
subject this land to their demand, that he did not purchase
or receive a deed to this land until the 17th or 18th of
November, 1856, some five or six months after the attach-
ments in this case had been levied on it, is not so satisfac-
tory a basis for a verdict and judgment as might be desired.
These conversations may very well have occurred as stated,
but there is something of improbability about them.    They
are out of the ordinary way that men do business.    John-
son's deed not having been placed on record until 1857,
may, however, be regarded as a circumstance corroborative
of the testimony of these two witnesses.    On the other
hand is the testimony of Lincoln, which is equally unsatis-
factory, bearing internal evidence of its own improbability.
He says he sold these lands to Johnson, through Britton,
in 1855, for the consideration of $4,500, which Johnson
had paid for him to Steward & Co., in New York, in 1852;
that Johnson was notified of the execution of the deed
immediately after its date, he retaining it according to his
promise, to have it put on record.

The evidence shows that these lands were worth four or five times the amount received for them, according to Lincoln's testimony. This fact, in connection with the staleness of this inadequate consideration, and the further fact that Johnson's deed, which Lincoln was to have placed on record, did not make its appearance until 1857, after the institution of this suit and the levy of the attachments, might well have caused the jury, while considering this point, to suspect that this deed to Johnson was made with a view to defeat this suit, and that it was but another manifestation of the versatility of talent before displayed by Lincoln in shifting this property about to meet the exigencies of the moment, and that Johnson was acting in this matter the part up to that time performed by Britton, who could not be relied on longer for that purpose, because he was sued, and notice of all the facts could be proved on him. In addition to this suspicion resting on Lincoln's testimony, his testimony and that of the witness, Hall, conflicts, positively and directly, on another point in the case, which, in the estimation of the jury, may have impaired its force.

There was no effort made to impeach the veracity or lessen the weight of the testimony of the two witnesses who deposed to Johnson's admissions in Paducah.

Amid this conflict of testimony, we cannot say that the jury have not found correctly. It is their peculiar and exclusive province to decide on the weight and credibility of such testimony, and it is well settled in the adjudications of this court that a verdict under such circumstances will not be disturbed, unless it appear to be clearly wrong, which cannot be said of the verdict in this case. The court did not, by its charge, submit to the jury any question as to Johnson's good faith in purchasing from Britton or Lincoln, but took it for granted, in its instructions, that he bought in good faith and for a valuable consideration. This question has not therefore been discussed.

The motion to quash attachments,.and the various de-murrers, exceptions, &c., to pleadings, do not appear by the record to have been brought to the notice of the court below, or to have been acted upon, and will therefore not be considered here.   Only the errors assigned by the appellant have been considered.   The record has not been inspected with a view to the detection of errors against parties who have not appealed.

There is no error in the judgment of which the appel-lant can complain, and it is

AFFIRMED.