LOUISA HANCOCK ET AL. V. TRAVIS HENDERSON, GUARDIAN.

1. LEVY OF ATTACHMENT ON REAL ESTATE.—The rule in this State, in the absence of statute, in executing attachments on real estate, is, that it is not necessary for the officer to go upon the land, or into its vicinity, or to see it, or to do any other act than to make his return upon the back of the writ. , It has been the general practice here to levy executions and attachments on real property without going upon the land.

2. AMENDMENT TO THE STATUTE SUGGESTED, so as to give more notoriety to the act of levying attachments on land, or, as in some States, to provide for notice by registration after the levy, in order to preserve the lien.

3. ATTACHMENT LIEN.—Where L. H. purchased, for value and without actual notice, from H. and H., who were in possession, lands which had been attached as the property of their vendor, in a suit upon a note against him and another, the deed to H. and H. being recorded at the time of the levy: *Held*, That L. H. (who, as well as H. and H. had been made a party to the suit in which the conveyance to H. and H. had been found to be fraudulent) took subject to the attachment lien.

4. LIMITATION.—L. H. pleaded the three and five years' statute of limitations: *Held*, That was no defense, as against the attachment lien.

5. JURISDICTION—DISCHARGE IN BANKRUPTCY.—It is now regarded as settled, that although a discharge in bankruptcy would prevent a personal judgment against the bankrupt, the State courts would still have jurisdiction to enforce a lien acquired by attachment or otherwise. (Elliott v. Booth, 44 Tex., 180, approved.)

APPEAL from Lamar.   Tried below before the Hon. John C. Easton.

This suit was instituted on the 11th of December, 1865, by Richard O. Thomas, as guardian of several minors, upon a note, the property of said minors, and against Wood H. Shearon and Samuel Hancock.  Thomas was succeeded as guardian by appellee Henderson.  Both Shearon and Hancock answered formally on the 10th of October, 1866, and on the same day Hancock plead specially that he was merely a surety on the note, and also that it was given for a Confederate-money transaction.

On the 9th of April, 1867, an attachment, based upon a bond and affidavit charging Hancock with having transferred his property fraudulently as to his creditors, was issued against the property of Hancock. The return upon this by the sheriff was, "Came to hand April 11, 1867, and same day executed by seizing and levying upon the following-described land, as the property of Samuel Hancock, (here the two tracts levied upon are described.)    W. A. Cox, Sheriff L. C."

On the 6th of April, 1869, an amended petition was filed, alleging that authority had been granted by the bankrupt court for plaintiff to prosecute his suit to final judgment against the defendant Hancock, and asking that his assignee be made a defendant. To this petition was attached, as an exhibit, the application of the plaintiff in the bankrupt court with the accompanying order thereon. This application recited the nature of the demand, that it was in dispute, that it had been defended up to the October Term, 1868, of the court, when proceedings were stayed at the instance of the attorneys of the bankrupt, subject to the action of the bankrupt court, and asking that the plaintiff be allowed to prosecute his suit to final judgment. The bankrupt court granted the relief asked for, providing, however, that execution should not issue until the question of Hancock's discharge should be determined.

On the 3d of April, 1871, John M. and Martin H. Hancock, sons of Samuel Hancock, were made parties defendants. The petition charged that sometime before the attachment was issued, Samuel Hancock, with the intention of defrauding his creditors, had transferred to his sons the two tracts of land levied upon by virtue of the attachment, and that the deed was without consideration, and void as to the creditors.

Finally, on July 21, 1873, an amended petition was filed, making Louisa Hancock a defendant. This petition stated that the land attached had been transferred to her by the Hancock boys, and asked that all clouds to the title to the land

be removed, and that defendant's (Louisa Hancock's) title be declared subservient to the attachment lien created by the levy of plaintiff's attachment.

In 1873 Samuel Hancock plead, as a perpetual bar to any recovery against him, his discharge in bankruptcy of November 1, 1869, upon his voluntary petition filed the 16th of March, 1868.

In 1872 John M. Hancock and Martin H. Hancock answered, denying all knowledge that the conveyance to them was fraudulent, and setting up as a fact that Samuel Hancock was indebted to them, and that Samuel Hancock conveyed to them the lands attached in settlement of said indebtedness, they paying to Samuel Hancock the excess of the value of land over the indebtedness. They also alleged that they had conveyed the lands to Mrs. Hancock.

Mrs. Hancock answered that she had purchased the land in good faith from John M. and Martin H. Hancock, who were at the time of the purchase and a long time previous thereto had been in possession of the land, paying full value for the same, and that she had neither actual nor constructive notice of the levy of the attachment. She claimed that before the purchase she examined the records, but not that she had examined the pleadings and papers in this suit. She further plead the three and five year's statutes of limitation.

The first reference in the pleadings to the attachment and the lands levied upon, is in the amended petition filed the 3d of April, 1871. The fact of the levy is not referred to in the application of the plaintiff in the bankrupt court; but there was the writ of attachment against Samuel Hancock with the sheriff's return of the 11th of April, 1867, describing the land indorsed thereon.

The sheriff did not go upon the land. He did not take possession of it. The only act he did was to make the endorsement (heretofore set forth) upon the writ.

The date of the deed from Samuel Hancock to John M. and Martin H. Hancock is the 25th of March, 1837; recorded

the 28th of March, 1867. Deed from John M. Hancock and Martin H. Hancock to Louisa Hancock for the lands in question, dated 6th of February, 1868, recorded 7th of January, 1867. Both deeds are general warranty deeds.

John M. and Martin H. Hancock went into possession of the lands about the date of their deed, and they remained in possession up to the time of the sale to Mrs. Hancock, when they put her in possession of the lands. She continued in possession, and in all things complied with the three years' statute of limitations, up to the time when she was a defendant in this suit. Mrs. Hancock exchanged land in Missouri of equal, if not greater, value than the land conveyed to her. The records were examined before the trade was made. She had no actual notice of the issuance of the attachment and the levy, but it does not appear that she ever made any examination of the papers in this suit before she purchased.

The verdict was for the plaintiff, and also finding that the transfer from Samuel Hancock to his sons was fraudulent. Upon this verdict a personal judgment was rendered against Shearon for the amount of the debt, and further decreeing a sale of the land attached to satisfy this judgment and costs, and that any excess should be turned over to Mrs. Hancock.

From this judgment·John M. Hancock, Martin H. Hancock, and Mrs. Louisa Hancock appeal.

*Maxey & Lightfoot,* for appellant, argued:

1. That the indorsement by a sheriff, in his office, of a levy on the back of an attachment, is not notice to a party in possession or to his innocent vendee, and that it created no lien, citing Drake on Attach., sec. 255; Leland *v.* Wilson, 34 Tex., 94; Paschal's Dig., art. 3764; Tiffany *v.* Glover, 3 Iowa, 387; Drake on Attach., sec. 238; Meuley *v.* Zeigler, 23 Tex., 91; Stoddart *v.* McMahan, 35 Tex., 294; Clay *v.* Nelson, 5 Randolph, 596; Irons *v.* Allen, Hardin's Ky. R., 44; Anderson *v.* Scott, 2 Mo. R., 15; Bradford *v.* Gillespie, 8 Dana, Ky. R., 67; Paschal's Dig., art. 149; 15 Tex., 568.

2. That in order to charge Mrs. Hancock with notice as a purchaser *pendente lite*, this land must have been in controversy at the time of her purchase, and must have been described in the pleadings, citing Edwards *v.* Crenshaw, 1 McCord's Ch. R., 264; 2 Johns. Ch. R., 158.

3. That though the transfer from Samuel Hancock to his sons might have been fraudulent, yet, unless Mrs. Hancock knew and participated in it, she as an innocent purchaser should be protected.

4. That she was protected by the three-years' statute of limitations.

5. That after the adjudication of Samuel Hancock in bankruptcy the court below had no further jurisdiction of him, (or his vendees,) except that conferred by the order of the bankrupt court, which was only to the effect of ascertaining the amount of the liability of the bankrupt upon the note.

6. That more than two years having elapsed since the final discharge of Samuel Hancock in bankruptcy, no judgment could be rendered against him or against his innocent vendees; these matters having been cognizable only in the bankrupt court. (Bankrupt Act, secs. 14, 20, 21, 22; Bump's Law and Prac. of Bank., 36, 37; Williams *v.* Atkinson, and Chappell, 36 Tex., 18; Cole *v.* Roach, 37 Tex., 413.)

*V. W. Hale* and *W. B. Wright* for appellee, cited Drake on Attach., secs. 224, 236, 237, 239, 249, 255; Leland *v.* Wilson, 34 Tex., 94; Peck *v.* Jenness, 7 How., 621; Freeman *v.* Howe, 24 How., 450; Taylor *v.* Carryl, 20 How., 583; Hagan *v.* Lucas, 10 Pet., 400; Buck *v.* Calbath, 3 Wall., 340; 10 American Rep., 150; Mollison *v.* Eaton, 16 Minn., 426; Moltbie *v.* Hotchkiss, 38 Conn., 80; Norton's Assignee *v.* Boyd, 3 How., 426; Janes *v.* Langham, 29 Tex., 416; Doss *v.* Griswold, 1 Tex., 100; Chambers *v.* Miller and Wife, 7 Tex., 75; Burleson *v.* Henderson, 4 Tex., 57; Bates *v.* Toppson, 99 Mass., 376; Leighton *v.* Kelsey, 57 Maine, 85; Perry *v.* Somerby, 57 Maine, 552; Stoddard *v.* Lock, 43 Vermont, 574; Doggett

*v.* Cook, 37 Conn., 341; May *v.* Courtney, 47 Ala., 183; Bump on Bank., (5th ed.,) 331; Truitt *v.* Truitt, 38 Ind., 16; Cole *v.* Duncan, 58 Ill., 176; Elliott *v.* Booth, 44 Tex. 180.

GOULD, ASSOCIATE JUSTICE.—The statute prescribes the manner of executing an attachment on personal property, but fails to direct in what manner lands may be attached. (Paschal's Dig., art. 149.) Mr. Drake, in his work on Attachments, says: "The requisites of an attachment on real estate are generally determined by statute; where, however, that is not the case, the rule which has obtained in Maine and Massachusetts would probably be received and applied—that it is not necessary for the officer to go upon the land, or into its vicinity, or to see it, or to do any other act than make return upon the writ that he had attached it." (Drake on Attach., sec. 236, and ref.; Perrin *v.* Leverett, 13 Mass., 128; Taylor *v.* Mixter. 11 Pick., 341; Burkhart *v.* McCellan, 15 Abbott's Prac., 243, note; Crosby *v.* Allyn, 5 Me., 453.) It is believed to have been the general practice in this State to levy both executions and attachments on real estate without going upon the land. In a matter so largely affecting titles, it would require considerations other than the hardship of a particular case to justify a ruling at variance with that practice, especially when, as we have just seen, it is supported by authority. The case may serve to show that the statute needs amendment, so as either to give more notoriety to the act of levying attachments on lands, or to provide for notice by registration after the levy, as is required in some States, in order to preserve the lien. (See 4 Kent, 435, note d.) In this case the return of the sheriff shows a levy of the writ of attachment, otherwise valid, and the fact that the officer did not go upon the land, does not affect it.

That a valid levy created a lien on the land attached, and, when properly returned on the writ into the court from which it issued, is notice to third parties, are propositions

which it is not deemed necessary to discuss. (See Drake on Attach., sec. 239; Tuttle's Adm'r, *v.* Turner, Wilson & Co., 28 Tex., 773.)

It follows, that Mrs. Louisa Hancock, having bought the land under these circumstances, took it subject to the plaintiff's lien. The plaintiff made her a party, and whilst that may have been unnecessary, she cannot complain.

In order to settle in advance the question of the validity of the conveyance by Samuel Hancock to his sons, they were properly made parties. The verdict of two juries declaring the conveyance to them fraudulent will not, under the evidence, be disturbed. The questions of the authority of the District Court to enforce the attachment lien, notwithstanding the discharge in bankruptcy of Samuel Hancock, is one which we regard as now settled. In the case of Elliott *v.* Booth, 44 Tex., 180, the authorities were, in an opinion by Justice Reeves, collated with care, and the conclusion reached that, although a discharge in bankruptcy would prevent a personal judgment against the bankrupt, the State courts would still have jurisdiction to enforce a lien acquired by attachment or otherwise. The decisions of our predecessors on this subject were not uniform, but the question is now believed to be settled in harmony with the ruling of the Supreme Court of the United States. (Doe *v.* Childress, 21 Wall., 642.)

The court did not err in disregarding the defense of limitation, which was inapplicable to the case. The effect of the decree is to subject Mrs. Hancock's interest in the land to the attachment lien, but her right to the land, after discharging the lien, was not in question.

It has been deemed necessary to notice only the questions discussed in appellant's brief, without passing in detail on the various errors assigned.

　　　　　　　　　　　　　　　　　　Affirmed.