Chastine McGregor et al. v. H. S. White et al.

Delivered January 16, 1897.

**Notice—Record of Subsequent Deed Puts Upon Inquiry as to Prior Fraud.**
   A. conveyed land to C. with intent to hinder and defraud B., a creditor, who had brought suit against him, but who had not acquired any lien on the land. C. afterwards conveyed to D., who paid for the land without any knowledge of the fraud of A.; but at that time a sheriff's deed of the land to B. was of record, B. having, after the conveyance to C., obtained judgment against A. under which the land was levied on and sold to B. Held, that the record of the sheriff's deed was sufficient to have put D. on inquiry as to the fraud of A. and to subordinate his title to that of B.

Appeal from Dallas. Tried below before Hon. Edward Gray.

*Thomas & Turney*, for appellants.—1. The registration of the constable's deed before the conveyance to Mrs. White was constructive notice to plaintiffs of a title which proves to be superior to that of Jane Dickerson, and charges plaintiffs with notice of such superiority. Illies v. Frerichs, 11 Texas Civ. App., 575; Jackson v. Terry, 13 Johns., 473; Anderson v. Roberts, 18 Johns., 529; Bean v. Smith, 2 Mason, 252; Hoke v. Henderson, 3 Dev., 12; Young v. Lathrop, 12 Am. Rep., 603; Sims v. Hammond, 38 S. W. Rep., 368; English v. Waples, 13 S. W. Rep., 57; Zimpleman v. Robb, 53 Texas, 282; Webb on Record of Title, sec. 156.

2. Aside from questions of registration, actual knowledge of the constable's deed charged plaintiffs with the duty of reasonable diligence to ascertain the validity of the title conveyed by it. And in the absence of any sort of inquiry, the law charges them with knowledge of the title conveyed by such deed. Halley v. Fontaine, 33 S. W. Rep., 261-3; Bacon v. O'Connor, 25 Texas, 213; Hawley v. Bullock, 29 Texas, 223; McLouth v. Hurt, 51 Texas, 120; Lumpkin v. Adams, 74 Texas, 101; Rudolph v. Junker, 1 Texas Civ. App., 521; Hill v. Moore, 62 Texas, 610; Wait, Fraud. Conv., sec. 376; Wade on Notice, 4-11, 12, 270; Freeman on Executions, secs. 141, 344; Webb on Record of Title, sec. 156.

*Bell & Atwell*, for appellees.

### ON REHEARING.

LIGHTFOOT, Chief Justice.—A rehearing having been granted in this case; we have changed our views of the law as expressed in the original opinion, which opinion is withdrawn.

This is an action of trespass to try title brought by appellees H. S. White and wife against the appellants for certain lands in Dallas County. Defendants plead not guilty. There was a verdict and judgment for the plaintiffs.

The evidence in the record tends to show that John Crum was the common source of title. He sold to Jane Dickerson by deed dated April 23, 1884, which was duly recorded the same date; the consideration expressed in the deed being $200; she and her husband sold to Reuben Crum October 28, 1888, and the deed was recorded October 30, 1888, the consideration expressed in the deed being $100. Reuben Crum and wife sold to appellee Aura B. White December 22, 1892, and the deed was recorded December 23, 1892, the consideration paid by Aura B. White was the sum of $75 in cash. The land in controversy was sold under execution under judgment in favor of R. H. Evans against John Crum, and was bought in by said R. H. Evans, and deed was executed to him by the constable August 4, 1885, and was recorded the same day. There appears to be a valid judgment and a valid execution under which the sale was made. R. H. Evans subsequently died testate, devising the land to the appellant, Mrs. McGregor.

It was shown that prior to the deed by John Crum to Jane Dickerson, above mentioned, and when the controversy was pending between John Crum and R. H. Evans, out of which the judgment was subsequently rendered, John Crum stated his intention to defeat the claim of Evans by transferring the land in controversy, which was all the property he had except a pony, to his mother, Jane Dickerson, declaring his purpose to deed the land to his mother in order to keep Evans from levying on it.   Jane Dickerson, from the testimony, appears to have had little or no property, and took in washing for a living.   Reuben Crum was the brother of John.   At the time of the purchase by Mrs. White from Reuben Crum, December 22, 1892, she paid the purchase money ($75) mentioned in the deed, and it was not shown that she had actual notice of any fraud or intent to defraud in the deed from John Crum to Jane Dickerson.   The constable's deed to R. H. Evans, of date August 4, 1885, was on record before Mrs. White's purchase, and before she purchased she acquired an abstract of title to the land which was placed in the hands of her attorneys for examination, and after such examination they pronounced the title to be good, and Mrs. White bought under their advice.   The abstract of title which was examined by her attorneys contained an abstract of the deed from the constable to R. H. Evans, of date August 4, 1885.

The court, in charging the jury, instructed them to find a verdict in favor of the plaintiffs, which they did.   The material questions raised in the case grow out of this instruction of the court.

*Opinion.*—The appellants' ancestor, R. H. Evans, having obtained judgment against John Crum, caused an execution to be levied upon the land, purchased under the execution, placed his deed upon record, and is now in possession of the land.   The constable's deed was dated August 4, 1895, was filed for record the same day, and was duly recorded.   At this time the apparent title was in Jane Dickerson, under the deed to her from her son John Crum.   It is claimed by appellants that this was a fraudulent deed, and was made by John Crum for the purpose of hindering, delaying and defrauding R. H. Evans in the collection of his debt.   If this was true, in a contest of titles between appellants and the fraudulent vendee, it cannot be questioned that the former would have the better title.

But the contest arises between appellant and a third party, the appellee, who claims to be an innocent bona fide purchaser of the land without notice, actual or constructive, of appellants' claim as set up in this case.   If appellee is such an innocent bona fide purchaser, she is entitled to recover the land.   Does the record before us show this to be the undisputed evidence, so that the court below was justified in its instruction to the jury to find a verdict for the plaintiff?

At the time of appellee's purchase, the deed from the constable to R. H. Evans was duly recorded, and an abstract of it was examined by her attorneys when passing upon the title.   If this deed conveyed any title

or right, either legal or equitable, appellee was charged with notice of such right or title at the time of her purchase. "When a conveyance has been properly recorded, the record is constructive notice of its contents, and of all interests, legal and equitable, created by its terms." 1 Devlin on Deeds, 710; Webb on Record of Title, sec. 152.

Our statute provides that such record, "shall be taken and held as notice to all persons of the existence of such grant, deed or instrument." Rev. Stats., art. 4652.

The record does not fully disclose what the constable's deed contained, but we presume that it contained the usual recitations set out in such instruments, and referred to the judgment and execution growing out of the case of Evans v. Crum. Was it sufficient to put a prudent person upon inquiry; and if so, would such inquiry have elicited the fact that appellant claimed title under it because the deed from Crum to his mother was fraudulent?

Our Statute of Frauds is as follows: "Every gift, conveyance, assignment, or transfer of, or charge upon any estate, real or personal, every suit commenced, or decree, judgment, or execution suffered or obtained, and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers, or other persons of or from what they are or may be lawfully entitled to, shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This article shall not affect the title of a purchaser for valuable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor." Rev. Stats., 1895, art. 2544.

Under this statute, it is clear, that while conveyances made to defraud creditors are, as to such creditors, void; yet, it is especially provided that this article shall not effect the title of a purchaser for a valuable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such vendor. If he had notice of either of these facts, he would get no title. In this case it is contended that the conveyances from John Crum to Jane Dickerson, and from the latter to Reuben Crum, were fraudulent, and that the registry of the deed from the constable to R. H. Evans was sufficient notice to put Mrs. White upon inquiry, which if pursued with proper diligence, would have led to full notice. The charge of the court below cannot be sustained except upon the theory that, if the fraud in the deeds mentioned should be conceded, and that she had notice of the deed under which appellant claims, still the deed of Mrs. White cannot be disturbed, even though the record might have been sufficient to put her upon inquiry which, if pursued, would have led to notice of the fraud. We cannot sustain this contention.

Mr. Bump, in discussing the statute of frauds, says: "The proviso protects all interests and estates lawfully conveyed or assured upon good consideration, and bona fide to a person who, at the time of such

conveyance or assurance, has no manner of notice or knowledge of the covin, fraud or collusion. These terms are broad and extensive. They apply to any conveyance, whether from the fraudulent grantor or fraudulent grantee. They are meant to protect a bona fide purchaser for a valuable consideration, without notice of the fraud from the operation of the statute. This is manifest as well from the internal evidence of the proviso as from the plainest maxims of equity and justice. The proviso is general. It exempts any conveyance upon good consideration and bona fide to any person not having notice of the fraud or collusion from the effect of the statute. Its benefits, therefore, extend to any bona fide purchaser for valuable consideration, whether he purchases from the fraudulent grantor or the fraudulent grantee." Bump on Fraud. Conv. (2 ed.), 480.

The same learned writer further says: "The notice of the fraud need only be sufficient to put a man of ordinary prudence and experience in business transactions upon the inquiry. It is sufficient if the information is so definite as to enable the purchaser to ascertain whether it is authentic, and sufficiently clear and authentic to put the purchaser on inquiry, and to enable him to conduct that inquiry to the ascertainment of the fact. It is not necessary that the notice should be in the shape of a formal communication. Whatever is sufficient to direct his attention to the prior rights and equities of creditors and to enable him to ascertain their nature by inquiry will operate as notice." Ib. 484; and see Webb on Record of Title, secs. 223, 156.

We have examined quite an array of authorities cited by the learned counsel on both sides, and others that have not been cited. We will not attempt a full discussion of them, but will present only a few of those which we believe control the question.

In the case of Thompson v. Baker, 141 U. S., 655, the Supreme Court of the United States, in an able opinion, reviews the Texas decisions. In that case the facts were somewhat similar to this; the difference being that in that case the creditor levied an attachment which was pending at the time the fraudulent vendee sold to a third party who had no actual knowledge of the fraud; while in this case the creditor obtained judgment, execution, levy, sale and constable's deed, which was duly recorded before the purchase of the third party. Judge Harlan said: "In Tuttle v. Turner, 28 Texas, 759, 773, which involved the title of one who purchased land after a levy thereon of an attachment, the court said: 'If he purchased after the appellees acquired a lien on the lands by levy of the attachment, his rights are subordinate to theirs. The attachment lien being a prior incumbrance, he takes subject to its prior satisfaction. Being a pendente lite purchaser, he is affected with notice of the rights of the appellees,' etc. So, in Hancock v. Henderson, 45 Texas, 479, 484, where the contest was between the holder of an attachment lien upon land, and a person who purchased from the grantees of the defendant in the attachment, who, it was alleged, had conveyed the land to such grantees with the fraudulent intent to hinder his cred-

itors, such purchaser having no actual notice of the issuing of the attachment or of the levy, the court said: 'That a valid levy created a lien on the land attached, and, when properly returned on the writ into the court from which it issued, is notice to third parties, are propositions which it is not deemed necessary to discuss * * *. It follows that Mrs. Louisa Hancock (the purchaser after the levy of the attachment) having bought the land under these circumstances, took it subject to the plaintiff's (attachment) lien.' To the same effect is Paxton v. Meyer, 67 Texas, 96, 98. See also County of Warren v. Marcy, 97 U. S., 96, 105; Union Trust Co. v. Southern Navigation Co., 130 U. S., 565, 570; Murray v. Ballou, 1 Johns, Ch., 566, 567."

If a purchaser from a fraudulent vendee, pending an attachment against the land in a suit against the fraudulent vendor, even if such purchaser has no actual notice of such attachment, is bound to take notice of it; a fortiori, a purchaser from a fraudulent vendee is bound to take notice of a recorded deed, which is the culmination of judicial proceedings against the fraudulent vendor. It follows, that Mrs. White was charged with notice of appellant's title at the time of her purchase, and if the deed from John Crum to Jane Dickerson was fraudulent, Mrs. White got no title.

Appellants' counsel in their brief ask that we reverse the case and render judgment in favor of appellants. This we cannot do without assuming to pass upon facts which it is the province of the jury to determine. Patrick v. Smith, 90 Texas, 267.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*