AYRES MOODY v. B. L. HOLCOMB AND EUGENIA HOLCOMB.

Naked possession for the length of time, and with the incidents enumerated in the statute, invests a party with a title to his land as fully and completely as it could be done by deed or patent.

A party who has had adverse possession of lands for ten years may maintain an action founded on the title thus acquired to be quieted in the possession and to remove clouds from his title, although the adverse title has not been used to disturb him.

The more appropriate remedy would perhaps be by action to establish and perpetuate the evidence of title.

ERROR from Upshur.　Tried below before the Hon. C. A. Frazer.

The plaintiff, Ayers Moody, brought suit against B. L. and Eugenia Holcombe, to quiet possession and to remove clouds from his title to six hundred and forty acres of land situated in Upshur county, alleging that " about nineteen years before the commencement of this suit, he settled upon a tract of land containing six hundred and forty acres of land"—then sets out carefully the field notes thereof. " That after he had settled upon said land as aforesaid, one Wm. King filed his headright certificate for one league of land upon land situated about eight miles S. S. E. from the town of Gilmer, and caused the same to be surveyed, and afterwards obtained a patent therefor. That said league of land so patented to said King as aforesaid, conflicts with the lands claimed by petitioner as aforesaid, and that it includes about three hundred and seventy-three and seven-tenths acres of petitioner's said tract of six hundred and forty acres described as aforesaid. That the portion of his land claimed by the said B. L. and Eugenia Holcombe, is a tract of about two hundred and thirty-five and four-tenths acres, the same being a portion of the said King league." Field notes of the King league, of the 640 acres of plaintiff, and of the conflict between the two surveys, and, also, of that part claimed or included in defendant's deed under the King grant and certificate of the county surveyor showing a plat of the surveys, &c., were appended to and made part of the petition.

Moody v. Holcomb.

"And petitioner further alleges, that he has had and held the quiet, peaceable and uninterrupted possession of said land for the space of nineteen years next before the commencement of this suit, and that he has, for the time aforesaid, been using, cultivating and enjoying the same, and claiming the same, and paying tax thereon; and that his claim to said land has been adverse to the said King and all persons claiming under him, since the date of the location of said King's certificate." That upon that part of his land claimed by defendants "he has made permanent and valuable improvements, and that his farm and houses and all his principal improvements are situated thereupon; and that the said defendants have set up claim to said two hundred and thirty-five and four-tenths acres, adverse to the claim of petitioner, which casts a cloud over his title; and that, by reason of the claim adversely set up by said defendants, petitioner has been hindered and delayed from selling his said land; that he desired to make sale of the same, and that he might have effected a sale but for the claim set up by defendants; and that there are persons now desirous of purchasing petitioner's said land, but that they object on account of the claim of defendants." Prayer that the title of said defendants, B. L. and Eugenia Holcombe, to said two hundred and thirty-five and four-tenths acres of land, as above described, be divested out of them and decreed to petitioner, and for costs.

The defendants filed a general demurrer, which was sustained by the court. The plaintiff excepted, and declined to amend. Judgment for the defendants.

The plaintiff sued out his writ of error, assigning for error the judgment of the court below sustaining the demurrer to his petition.

*C. C. Galloway*, for plaintiff in error, cited Greenleaf's Ev., §§ 15, 16, 32; O. & W. Dig., art. 505; 13 Tex. Rep., 143; Sayles' Prac., § 165; 21 Tex. Rep., 708; 7 Tex. Rep., 288.

*P. Murrah*, for defendants in error. The statement of the facts, or the allegations of the petition rather, seem to me a sufficient argument to sustain the court below, and I find it difficult to treat the case seriously.

The prayer of the petition asks of a court, that the grossest injustice shall be done to Holcomb and wife; that they shall be divested, for the benefit of plaintiff, of their title to two hundred and thirty-five acres of land, acquired to them by regular purchase and deed, and that the court, in addition to divesting them of the title to the land and vesting it in plaintiff, shall compel them to pay the costs of the suit.

This prayer, which seems to me to outrage equity, concludes a petition which, from beginning to end, shows that if plaintiff in error has any right at all to the land, he acquired it by being a trespasser, and by the forbearance of King and those who claim under him. Plaintiff in error, without reserve or concealment, states the injustice done by him to King, and then asks a court of equity to reward him for trespassing upon the rights of others, by decreeing to him a perfect chain of title acquired by law, and paid for by those upon whose rights he trespassed; and as if to make his cause as bad as possible, he gives as a reason for this prayer, that he could sell his land to better advantage if he had the title of Holcomb and wife, for which they paid their money, induced to do so by a patent spread upon the records of the clerk's office of Upshur. The petition does not even have the poor merit of stating that the deed to Holcomb and wife has been or may hereafter be used to the annoyance of plaintiff, and that he has been or may be disturbed in his possession by it; nor has it the enlarged liberality of asking that King be made a party, so as to secure from him, in the same decree, a title to the balance of the six hundred and forty acres in conflict, and thereby divide the costs between King and defendants in error. Defendants would have been gratified for a favor of this sort, and with the expression of satisfaction with a *quit claim* from defendants. Nor was plaintiff kind enough to prepare a deed and present to Holcomb and wife for their signature, as a cheap way of getting title, before suing them and driving them to the expense of litigation exclusively for his benefit. What adjudicated case, what sound principle, can be cited in support of such a petition? To what class, to what legal definitions, shall this suit be referred? It is not an action *quia timet;* it is not a bill of peace; it finds no sanction in the authorities and principles

Moody v. Holcomb.

which support the cancellation and delivery of deeds, bonds and other instruments, though if it finds a place anywhere in law or in equity, it is among the latter authorities.  In the first place, the cancellation of deeds or other instruments, judging from all the adjudicated cases, is confined to instances where there is a priority, in some way, between the parties to the instrument sought to be canceled.   I will not attempt to define how the priority must arise, but it must exist by contract, assignment, inheritance or otherwise. I can cite no adjudicated case to this point, but glean it from all the cases.   If this point be not decisive of the case, the rule applicable to cases of this sort is *decisive.*   The cases in which equity relieves by setting aside or canceling deeds, bonds, or other securities, are where there has been actual fraud in the party defendant in obtaining the deed or security, or constructive fraud against public policy, and the plaintiff is not a partaker in the fraud. (Willard's Eq. Jur., 304.)   And it is generally agreed, that the relief by the delivering up a contract requires a stronger case than to resist a specific performance.   Nor will relief be granted universally, though the defendant be in the wrong.   The plaintiff must also show the title to relief beyond the mere technical breach of duty, which would confer a right of action at law.   (Willard's Eq. Jur., 302.)   Chancellor Kent, who goes beyond most jurists and adjudicators in extending the jurisdiction of courts of equity in cases of this kind, says : "Perhaps the cases may all be reconciled on the general principle that the exercise of this power is to be regulated by sound discretion as the circumstances of the individual case may dictate, and that the resort to equity to be sustained, must be expedient, either because the instrument is liable to abuse from its negotiable nature, or because the defence not arising upon its face may be difficult or uncertain at law, or from some other special circumstances peculiar to the case, and rendering a resort here highly proper, and clear of all suspicion of any design to promote expense and litigation." (Hamilton v. Cummings, 1 Johns. Ch. R., 519–20.)

I find it difficult to extract any certain rule for the government of such a case from the confounded language and discordant reports

on this subject; but the rule cited is believed to be true and in conformity with the best authority.

It is not deemed necessary to discuss the character of the title set up in plaintiff's petition—the statute of limitations. Suffice it to say, that if time has given him a title by possession and use of the land, the title of defendant is not necessary to him, for he wants not two good titles. If plaintiff's title is good, defendant's is harmless so far as the conflict extends, and the court would not decree the removal of a harmless "cloud." If time has not perfected his title, he has no title whatever; for the allegations of the petition negative the idea of a grant, and show facts inconsistent with such a presumption. Again, the petition is totally defective, for it presents no fact which shows any injury done, or attempted to be done, by defendants to him. All the wrong presented by the petition is wrong done by himself, and the court will only apply its remedial justice to prevent an injustice done, or about to be done, by defendants. Again, even if plaintiff has any equity, his equity is not superior to that of defendants; for they have a regular conveyance to the land, and the presumption is that they paid a valuable consideration therefor, without knowledge of any claim on the part of plaintiff; and if the equities are equal, the court must be indifferent between them.

Moore, J. It must be held, under the authority of the case of Smith v. Montes, 11 Tex., 24, that the court erred in sustaining defendants' exceptions to the plaintiff's petition. In that case, it is said that a party who has held adverse possession of lands for the period prescribed by the statute of limitations, may maintain an action, founded on the title acquired thereby, to be quieted in the possession and to remove clouds from his title thus acquired. We see no reason to question the soundness of this decision. The seventeenth section of the statute of limitations, in express terms, declares that ten years peaceable possession, under the circumstances therein set forth, shall give to the possessor full property precursive of all other claims, except such as are protected by said section of the statute. It is immaterial what may be the nature

or character of evidence by which a party's title to his property may be established. Naked possession for the length of time, and with the incidents enumerated in the statute, invests a party with a title or right to his land as fully and completely as it could be done by a deed or patent. Why then should not the courts as willingly and readily grant their aid in relieving a title of this character from doubt or embarrassment as any other, or interpose to protect the owner from the danger of future injury? The very nature of the title, and the evidence by which it must be established, would seem to justify the owner in invoking the aid of the court. It is said, that the defendants have not disturbed the plaintiff in his possession or title, and that he has therefore no cause of action against them. But our courts have always held that the owner of land may invoke the aid of the court to remove a cloud created by an adversary title, although the adverse title had not been used to disturb him. And it is a matter of every day practice for the owner of land to bring an action of trespass to try title, although the defendant is neither in the actual possession of it, nor attempting to take it, but merely has an adverse paper title. The legal effect and object of such suits are solely to establish the plaintiff's and conclude the defendant's title by the judgment. And such cases do not seem to differ materially from suits to remove a cloud and quiet the plaintiff's title. It could hardly be doubted, we suppose, that the plaintiff might have instituted an action of trespass to try title; and if his testimony showed that he had acquired a title by reason of his possession, that he would have been entitled to a judgment. We see no reason why he should not do so, where the suit, though in a different form, is substantially for the same purpose. Though, in such cases, the more appropriate remedy, perhaps, to which a party should resort, would be an action to perpetuate and establish his evidence of title.

It is urged, if this suit can be maintained, that a party may be taxed with the cost simply because he has permitted a wrong doer and trespasser to remain upon his land until he has acquired a title by possession. And is it not enough, it is asked, that the owner has lost his land, without taxing him with the cost of defending a suit? But if the statute gives the party a title from the length

of his possession, it precludes us from regarding him as a wrong doer or trespasser, when asserting any right under it, that an owner of land by any other character of title might do. Nor does it follow that the defendant in such cases would be taxed with the costs. If he did not wish to contest the plaintiff's right, he could and should disclaim, and in that event of course the costs would not be adjudged against him; and even if he did not do so, the court, in such cases, can exercise its discretion with reference to the costs.

The judgment is reversed and the cause remanded.

Reversed and remanded.