No. 5670.

SAMUEL RICHARDS *v.* JOEL P. SMITH ET AL.

1. LIMITATION.—In order that the filing of a suit to recover land should operate to stop the running of the statute of limitation in favor of the defendant, it is not necessary that the petition should charge a trespass or adverse occupancy by defendant. In a suit for partition against one defendant whose interest is admitted, and with whom another is joined as defendant who is charged with claiming an unknown interest, limitation is stopped in favor of the one thus joined from the date of filing the petition, when it is alleged in the petition that the plaintiff and the defendant, whose interest is admitted, own the entire tract of land.

2. SAME.—The placing of rails on land, no further act being shown toward exclusive possession, is not sufficient to start limitation. The assertion of an adverse and exclusive right to the land, no matter how long continued, can not avail unless accompanied with exclusive possession.

2. SAME.—An actual enclosure of land in possession is not in all cases necessary to meet the requirements of exclusive possession under the statutes of limitation. The character, situation and adaptability of the land for specific uses, in connection with the use made of it by one claiming limitation, may be looked to in determining whether the occupation is exclusive.

3. SAME.—The adverse claim may be manifested by facts which will not amount to an exclusive possession; while an exclusive possession may be such as to be sufficient evidence of an adverse claim.

4. SAME.—If, in addition to placing material around land to enclose it, the claimant should begin to construct a fence, and while doing so should, by other means than the fence, secure to himself, and actually have exclusive possession and occupancy, it would seem that limitation would run from the time the exclusive occupancy began.

5. SAME.—When the acts done on land by a claimant thereof are such as to give unequivocal notice to all of the adverse claim, and this is accompanied by actual exclusive possession, then limitation will run in favor of such claimant from the time the exclusive occupancy began, whether the land be enclosed or not.

6. NEW TRIAL.—The fact that a party seeking a new trial did not understand a witness who testified in plain language, and that if he had properly understood him evidence would have been introduced material to the issue, and which would be produced on another trial to correct his evidence, will not avail on motion for new trial.

7. SAME.—Neither will the fact that a witness who was not examined was so fatigued by her journey in attending court that she could not testify afford ground for new trial, no matter how material her testimony, when no postponement of the trial was asked, nor any of the means resorted to provided by statute for securing her evidence.

APPEAL from Travis.    Tried below before the Hon. A. S. Walker.

*Walton, Hill & Walton,* for appellant.

*Carleton & Morris,* for appellees.

STAYTON, ASSOCIATE JUSTICE.    This action was brought by Joel P. Smith, as we learn from the conclusions of fact found by the judge who tried the case, on February 11, 1885, against R. H. Kirby and Samuel Richards, to partition one-third of a league of land, in which the plaintiff asserted title to three-fourths, and alleged title to the residue to be in the defendant Kirby.

It was alleged that Richards claimed some interest in the land, which was alleged to be unknown to the plaintiff.    The land was alleged to be and was in Llano county, and the defendant Richards was alleged to be a resident of Blanco county, and the defendant Kirby a resident of Travis county.    The prayer was for adjudication of the rights of the respective parties and for partition.

The defendant Richards interposed a plea to the jurisdiction of the district court of Travis county, which, however, was never acted upon.

On June 4, 1885, the plaintiff dismissed as to the defendant Kirby, who at the same time became a party plaintiff.    On the same day, the plaintiff and Kirby filed an amended petition, having all the essentials of a petition in an action of trespass to try title.    The defendant Richards pleaded not guilty and set up title in himself to seven hundred and thirty-five acres of the tract, including its west end.    He also pleaded limitation, based on five years possession under a tax deed dated June 6, 1879, which it is not claimed was sufficient to pass title, but was a deed sufficient to furnish the basis for limitation pleaded.    This deed was properly recorded on June 22, 1879, and taxes on the land claimed under it for the year 1879, and the five succeeding years, were paid by appellant.    The defendant Richards, in the fall of 1879, began preparations for enclosing a pasture, which was to include about twenty-five acres of the land covered by the tax deed, and other land not on the same survey.    With a view to this, in that year, some rails were put on the land in controversy, but no fence was erected during that year, nor does it appear that any act was done indicating clearly an intention

to enclose any specific part of the land in controversy, so as to exercise an exclusive control of it.

The evidence for the defendant tends to show that he enclosed about twenty-five acres of the land in controversy as early as May, 1880, and that from the time of such enclosure he had exclusive possession. The evidence for the plaintiff tends to show that no part of the land in controversy was enclosed until the latter part of the summer of 1880; but one witness stated that the enclosure was completed in June or July of that year.

The court found that limitation ran until the filing of the amended petition, on June 4, 1880, but that the evidence was not sufficient to show an adverse possession for five years prior to that date.

We see no reason to doubt the sufficiency of the original petition to stop the running of the statute of limitation from the date it was filed. It asserted title in the plaintiff and the defendant Kirby to the entire tract, and sought an adjudication of the right. It was not shown that, five years before the petition was filed, the defendant had any exclusive possession whatever. The placing of rails on land, no further act being shown, is not sufficient evidence of such possession. It may indicate an intention at some future time to take an exclusive possession, and it may afford some evidence of an intention to claim adversely; but an intention to assert an adverse claim, or its actual assertion, gives no right, however long such intention to assert or actual assertion of adverse claim may continue, unless it be accompanied with an exclusive possession.

We do not think an actual enclosure, by fence or otherwise, necessary in all cases, to give an exclusive possession. The character and situation of the land, and the uses to which it is adapted and may be and is actually put, must be considered in determining whether an occupation is exclusive or not. To give title by limitation there must be an adverse claim, and exclusive occupation or possession of the thing for the length of time and under the circumstances prescribed by the statute.

The adverse claim may be manifested by facts which will not amount to an exclusive possession, while an exclusive possession may be such as to be sufficient evidence of an adverse claim. The placing of material around a tract of land for the purpose of erecting a fence, or the placing of material on land to erect a house, would be evidence more or less strong as it might be affected by other facts, that the person so placing mate-

rial asserted a claim to be the owner of the land, and, unexplained, might be held sufficient evidence of an adverse claim.

If, in addition to placing material around a tract of land, the person so placing it should commence to erect a fence around it, and while doing so should by other means than a fence secure to himself and actually have the exclusive possession and occupation of the land, it would seem that limitation would run from the time the exclusive occupation began. The facts must clearly show the adverse claim open in its nature, as well as an exclusive possession of which an enclosure, substantial and permanent in character, accompanied with such use as the land is adapted to, is often the most satisfactory evidence.

When the acts done upon a tract of land are such as to give unequivocal notice to all persons of a claim to it, adverse to the claim of all others, and this is accompanied by an actual possession exclusive in its character, then limitation will run in favor of the person so asserting adverse claim and enjoying an exclusive possession from the time such exclusive occupancy began, whether the land be enclosed or not.

In the case before us there is no evidence of an exclusive possession by the appellant for a period continuing for five years before the institution of the suit. If limitation, however, was not suspended until the filing of the amended petition on June 4, 1880, we do not see that the finding of the court was not that required by the evidence. There was no pretense of an exclusive possession of any part of the land prior to the time the fence was completed around about twenty-five acres, and the court after declaring that the burden of proving the facts which would support the plea of limitation rested upon the defendant, found that "the testimony to the date of the completed enclosure is not clearly shown to have been made before June 4, 1880, and five years possession, such as required by statute, does not exist."

The evidence offered by the defendant leaves the time when the exclusive possession began uncertain, while that offered by the plaintiff tends strongly to fix the date of the enclosure later than June 4, 1880. Under such facts the finding can not be disturbed.

Witnesses for the plaintiff, who showed from their testimony that they were familiar with the land in controversy and with the improvements placed on it from time to time by the defendant during the year 1880, gave testimony tending strongly to

show that no land was enclosed by the defendant on the tract in controversy prior to June 4, 1880.

They further showed that they were aware that the defendant during that year enclosed a larger part of the tract, subsequently to the enclosure of about twenty-five acres on which limitation in this case is based.

The defendant testified in the case, and so far as the record shows, heard the evidence of the witnesses for the plaintiff, but he did not propose to testify in rebuttal or explanation of the testimony given by the witnesses for the plaintiff.

He now urges that the court erred in overruling his motion for a new trial, which was based on what he claims to be evidence of the nature of newly discovered evidence. This evidence consists of the testimony of himself and wife. He showed in his motion for new trial that, on another trial, he would state facts which would tend to show that the witnesses for the plaintiff were mistaken as to the time when the first enclosure was made, and he gave as a reason for not testifying in rebuttal of their evidence given on the trial, that both he and his counsel understood the witnesses for the plaintiff to testify as to the time when a second enclosure was made by him on the land, and not as to the time when the first enclosure was completed by him.

The testimony of the witness, as we find it written in the statement of facts, in plain English words, left no ground for misunderstanding their evidence, if even slight attention was given to it.

They both spoke of the first improvement made on the land, and one of them testified explicitly that the last and largest portion was built after his removal to Hays county, which was in the autumn of 1880. If the defendant did not understand the evidence of those witnesses, it must be attributed to his want of ordinary attention, and his failure to understand it, and to testify in rebuttal furnished no sufficient ground for a new trial.

The defendant, who lived in Blanco county, on the day before the trial, brought his wife to Austin to testify in the case in his behalf, but on the next day she was so affected by the fatigue of the journey that she was unable to go to court and testify. It is not claimed that the defendant was not aware of what her evidence would be, and it does not appear that any postponement of the cause was asked on account of her inability to attend court and testify, nor that any effort to take her testimony in any of the modes provided by law was made.

A new trial was sought to enable the defendant to have the benefit of the testimony of his wife on another trial; and by her he proposed to prove that the enclosure on which he based his plea of limitation was completed as early as the month of May, 1880. This evidence was not shown to have been discovered after the trial, and the inferences from the record are that the existence of the evidence was well known before.

If, under such a state of facts, a party goes to trial without objection, and without having used the means the law places in his hands to procure evidence, he has no just ground for complaint if a motion for new trial, based on evidence which he might have had by the exercise of ordinary diligence, is refused.

There is no error in the judgment, and it will be affirmed.

*Affirmed.*

Opinion delivered April 12, 1887.