### PHILADELPHIA TRUST CO. v. JOHNSON et al.   (No. 1005.)*

(Court of Civil Appeals of Texas. Beaumont. Dec. 10, 1923. Rehearing Denied Dec. 19, 1923.)

**1. Executors and administrators ⬤➡438(8)— Heirs held not necessary parties to suit against executor in trespass to try title.**

That decedent's heirs were not made parties to a suit in trespass to try title against an executor as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 1837, in suits against estates involving title to realty, *held* not fundamental error, in view of the parties' agreement that decedent's rights to the land had passed to defendant as executor.

**2. Executors and administrators ⬤➡453(4)— Judgment for plaintiffs in trespass to try title against estate conclusive as against executor praying for judgment quieting title.**

In trespass to try title against an estate, the executor of which pleaded possession and title by limitation, and prayed that its title be quieted as against plaintiffs' claim, a judgment for plaintiffs is as conclusive, under Vernon's Sayles' Ann. Civ. St. 1914, art. 1836, as if rendered against decedent; defendant's answer being in the nature of a cross-action for title to the land.

**3. Adverse possession ⬤➡27—Agency of person in charge of premises for claimant held shown.**

In trespass to try title to land claimed by limitation, evidence *held* to show that a certain person was placed in charge of the premises by plaintiff as her agent, and continued to rent and use them in such capacity.

**4. Evidence ⬤➡67(1)—Presumption that one placed in charge and taking possession of premises for another continued to so hold them.**

The presumption is that one placed in charge and taking possession of premises for another continued to so hold them, a status once shown to exist being presumed to continue until the contrary is shown.

**5. Adverse possession ⬤➡57—Finding of possession under claim of right for 19 successive years sustained.**

In trespass to try title, evidence *held* to support a finding that plaintiffs were in possession of and asserting their right to the premises for 10 successive years between 1856 and September 1, 1879, for over 9 years of which period the statutes of limitation were suspended because of the Civil War.

**6. Landlord and tenant ⬤➡1—Possession by tenant with landlord's consent sufficient to create relation.**

To create the relation of landlord and tenant, it is only necessary that the tenant take possession by the landlord's consent, and payment of rent or other consideration for the use of the premises is not required.

**7. Trial ⬤➡194(9)—Charge on acts sufficient to evidence claim of right held not erroneous as on weight of evidence.**

A charge that acts of dominion usually attending ownership are sufficient to constitute and evidence a claim of right, *held* not erroneous as on the weight of the evidence and telling the jury what would constitute and evidence such claim.

**8. Evidence ⬤➡317(5)—Landlord and tenant ⬤➡18(2)—Relation of landlord and tenant, but not tenant's possession, may be shown by the latter's declarations.**

The relation of landlord and tenant, but not the latter's possession of the premises, may be shown by the tenant's declarations.

**9. Adverse possession ⬤➡27—Principal and agent ⬤➡22(1)—Declarations of agent held admissible to show relationship and occupancy for landlord.**

In trespass to try title to land claimed by limitation, the declaration of one shown to have been left in charge, not merely of the house and furniture, but of the entire premises, by plaintiff as her agent, that he had her place in charge, *held* admissible as evidence, not only of his relationship to her, but that the occupant of the place was holding it under him for plaintiff.

**10. Adverse possession ⬤➡96 — Grants and rental of parts of tract not included in part claimed insufficient to start running of limitations.**

Grants of rights of way across and a site for a school house on a tract of land, an agreement for the opening of a street, renting portions for agricultural and pasturage purposes, fencing a part for a short time, and taking tenancy contracts from squatters occupying very small portions not definitely described or located, *held* insufficient to start the running of limitations against a claim to a part not affected by the grants, nor definitely shown to include the portions occupied by such squatters.

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction February 13, 1924.

**11. Adverse possession ⚖️96—Placing tenants in possession of other parts of tract than that claimed adversely insufficient to start running of limitations.**

Placing tenants in possession of other portions of a tract than a part awarded other claimants by limitation before lessor's purchase of the tract would not amount to possession of such part so as to enable lessor to obtain title by limitation, actual possession and continuous occupation and use thereof for five years being essential.

**12. New trial ⚖️26—Defect of parties plaintiff should be raised before judgment.**

The objection that a party has no right to sue should be raised before judgment, and is too late on a motion for a new trial.

**13. Appeal and error ⚖️230 — Incapacity of aged invalid to know or claim rights to land by limitation held fact question not reviewable when not raised before judgment.**

Incapacity of a 90 year old woman, invalid in body and mind, to know or claim her rights to land by limitation, held a question of fact, which could not be raised on appeal, where not raised before judgment.

**14. Trespass to try title ⚖️38(1)—No presumption of title in predecessor into whom claimant shows chain of title from sovereignty.**

No presumption of title in favor of a predecessor, into whom claimant shows a chain of title from the sovereignty, or those under whom he claimed, can be indulged.

**15. Adverse possession ⚖️106(4), 109—Limitations vest title; title by limitation not lost by abandonment.**

Perfection of title by limitation vests full, legal, and equitable title, which cannot be lost by abandonment.

**16. Adverse possession ⚖️115(1)—Grant not presumed.**

A grant or conveyance will not be presumed as a matter of law.

**17. Trespass to try title ⚖️44—Effect of evidence in support of presumption of title is for jury.**

A presumption of title, if indulged at all, is one of fact, the effect of the evidence in support of which is for the jury.

Appeal from District Court, Jefferson County; W. H. Davidson, Judge.

Action by Mrs. Elizabeth C. Johnson and others against the Philadelphia Trust Company, executor of the estate of Chas. O. Baird, deceased. Judgment for plaintiffs, and defendant appeals. Affirmed.

C. A. Lord, of Beaumont, for appellant.

M. S. Duffie, E. E. Easterling and J. H. Rachford, all of Beaumont, for appellees.

O'QUINN, J. This suit was brought by appellees, as plaintiffs, against the defendant, Philadelphia Trust Company, a corporation, with its domicile in the city of Philadelphia, Pa., as executor of the estate of Chas. O. Baird, deceased, in trespass to try title to 735 acres of land, a portion of the Thomas F. McKinney league in Jefferson county, Tex., alleging that the defendant, on January 21, 1921, unlawfully entered upon said land, and ejected appellees therefrom. Appellees also claimed the land by the statute of 10 years' limitation.

The defendant answered by general denial, plea of not guilty, and specially pleaded the statutes of limitation of 3, 5, and 10 years.

The case was tried before a jury, upon special issues relating solely to appellees' plea of limitation, which were answered in favor of appellees for a portion of the land claimed, describing it by metes and bounds, as follows:

"Beginning at river 20 feet east of double Magnolia, thence south 1,200 feet, thence east 1,164 feet, thence north to river 32 feet west of sand bank, thence up river to starting point."

Upon which answers judgment was rendered in favor of appellees for said portion. Motion for new trial being overruled, defendant appealed.

[1] Appellant's first proposition complains of fundamental error, in that the suit was against the executor of the estate of a decedent, involving the title to real estate, and the heirs of the decedent were not made parties to the suit; that they were necessary parties defendant, and that without such parties defendant no valid judgment could be rendered.

Article 1837, Vernon's Sayles' Civil Statutes, provides:

"In every suit against the estate of a decedent involving the title to real estate, the executor or administrator, if any, and the heirs shall be made parties defendant."

In the trial of the case, the parties made the following agreement:

"It is agreed by the parties that Chas. O. Baird died on June 17, 1918, and that whatever rights, titles, or claims he had or held to the land in controversy had passed to and rests in the defendant, Philadelphia Trust Company, as the executor of the estate of Chas. O. Baird, which is the defendant in the suit."

[2] In view of the above agreement, we think that appellant's proposition should be overruled, it appearing by said agreement that appellant is the executor of the estate of C. O. Baird, and as it could act thus only by the provisions of a will duly executed by the said C. O. Baird, and the agreement showing that all the title of the said C. O. Baird in and to the land in controversy, by virtue of said executorship, had passed to and rested in appellant, it is thought that the correct interpretation is that the devisee, appellant, and not the heirs, should be made par-

ty. In such case the heirs have no interest to be affected. Lufkin v. City of Galveston, 73 Tex. 341, 11 S. W. 340. Moreover, this is a suit in trespass to try title, in which the defendant, an executor, pleaded that it was in possession of the premises in question, and claimed the land by limitation, and prayed for affirmative relief, asking that its title be quieted, and for judgment removing the cloud from its title, arising by the claim to said premises made and asserted by the plaintiffs. This was in the nature of, and, in effect, a suit in cross-action by the executor for title to the land, and under article 1836, Vernon's Sayles' Civil Statutes, the judgment is conclusive, as much so as if C. O. Baird himself had been the defendant, and the same had been rendered against him.

Appellant's second and third propositions assert that the judgment is erroneous, because the evidence fails to show that plaintiffs had and held possession of any part of the land in question under a claim of right for a period of 10 successive years—in other words, that the evidence does not support a judgment for title to any portion of the land by the 10-year statute of limitation.

The undisputed evidence shows that John T. Johnson, husband of Mrs. Elizabeth C. Johnson, and father of Mrs. Brown and Mrs. Tyner, plaintiffs, with his family, in 1856, took possession of the land in question under a claim of right, built a 6-room dwelling house, and some outhouses on it, and erected a very substantial cypress fence, inclosing the portion awarded plaintiffs, and planted an orchard of figs, peaches, and plums, and lived in said dwelling house, and cultivated, used, and enjoyed the inclosed premises up to 1866, when he moved to Orange, Tex., for the purpose of placing his children in school, and when he thus removed he rented the premises to one William Block, who took possession, lived in said house, and cultivated the inclosed land until 1869; that in 1868 Johnson died, and his wife and children returned to and took possession of the premises in the beginning of 1869, and lived in the house and cultivated the land inclosed until some time in 1872, when Mrs. Johnson moved to Montgomery county, Tex., where some of her relatives lived. Thus far there is little or no dispute as to the facts. It is in evidence that when Mrs. Johnson left the place in 1872, she placed same in charge of one Samuel Remley, who resided within a few feet of her dwelling house, and who had once been a partner in the mill business with her husband, John T. Johnson, and that Remley took possession of the inclosed premises, and held same for her, individually and by tenants and employés, up to and until 1880. Appellant strongly insists that the evidence does not support the verdict and finding and judgment that Remley was placed in charge of the land as the agent and representative of Mrs. Johnson. Mrs. Brown testified:

"When you ask me where my mother went in 1872, well, she left the house furnished, and left it in the care of Mr. Remley; shut up the house, and went to Montgomery county. She went there because all her relatives were there —all that was left—her brothers and all died, but there was uncles and aunts and cousins up there, and she wanted to go back among the other people. I don't know what became of the house or the furniture. I don't know anything about it. I know that in 1872 she turned the place over to Mr. Samuel Remley.

"I don't know anything about it, because I was married, and my husband and I were not with my mother, and things was left in Mr. Remley's hands and in his care, and I don't know what disposition he made of it. I never heard from Mr. Remley. I never wrote to him, and I never went to see him. It is right that I never heard from him from the time we left in 1872, and I don't know when he left the place. Mr. Remley was left in charge of mother's old home, and I never went back there until one time I went down there with Mrs. Rachford."

On cross-examination she testified:

"I said when my mother left there in 1872 she left a man by the name of Samuel Remley in charge of her place. Samuel Remley lived right alongside of her, across the line from her. I don't know how many feet away it was, but I could shout to him if we needed him, and call him from home. When my mother went to leave, as far as I know, she just left Mr. Remley to look over, and keep an oversight over her property; that is the idea. I told you my husband and I were together, I didn't know Mama's business. I was there at that time, but she lived in one part of the house, and I in the other. From there I went to Willis, Montgomery county, and mother went to Denver. We both left at the same time. We didn't take the furniture with us; we left the house, furniture, and everything in the house in the care of Mr. Remley. Now, that is as far as I know. In 1872 was the last time I saw the fences, and they were in good repair then."

E. A. Hemenway testified:

"When I first saw that place, Mr. Riggs lived there. The first time I was over there I got acquainted with him. I was working for old man Stockholm, and me and one of his boys wanted a pair of shoes, and this boy knew old man Riggs, and we went up there, and had to buy a pair of shoes, and we went to Mr. Remley's place, and talked with him a good long while, and I asked the old man, 'Does Mr. Riggs keep shoes?' and he told me he did, and I finally asked him who owned that old place. Mr. Remley is dead. I remember the fences around that Johnson place. There was a plank fence around it. I don't remember what year it was that I was there. I know he moved away from there. The best of my recollection it must have been in a couple of years that he moved; I don't know how long he had been there when I got there. I was 17 or 18 when I went to Riggs' place. I will soon be 67 years old. Mr. Remley is dead. I had a conversation with Mr. Remley. We were talking, and I just merely asked him, and had a conversation with him on his front porch. I knew Mr.

Remley from that time on up until he died. I had probably known him a little while before that. He was in sight of that property at the time we were talking. They have a public road there now, and it was just across the road. After I saw that place, and the fences there, I don't remember exactly how long the fences were there in the same shape I saw them, but it was for several years though. I couldn't say exactly how many years, but some 5 or 6 years, and may have been longer."

On cross-examination he testified:

"Mr. Riggs was the last man that lived in the Johnson house. About that time and a little later on that house was just about on the ground. The northeast end was all rotted out—no blocks under it. I was 17 or 18 years old when Riggs lived there. I was born in 1856. It will be about 1873 that Riggs was in that house. He is the last one I know of that ever lived there. I have been in that neighborhood all the time, off and on."

On redirect examination he testified:

"I don't know the name of Mr. Riggs who was in that house; I don't know what his first name was. He had a boy named George. Mr. Riggs is dead, and George is dead. Mr. Remley is dead. On the occasion that Stockholm and I went to Mr. Samuel Remley's house we rode up there and got down and met old man Remley on the front porch, and one or the other—I don't remember, but I believe I asked him where that shoemaker was, and he said, 'Who are you?' talking to me, and Stockholm says, 'We was going to Mr. Riggs,' and he said 'He lives close there in that house,' and I wasn't acquainted with the old gentleman—he was a German—and I said, 'I am going over there to buy a pair of shoes, and I don't reckon he will eat me up, will he?.' and he said, 'No, he is a mighty fine old man. I have got that place in charge.' He never said whose place it was. And so I went over there, and bought me a pair of shoes."

J. August Schneider testified:

"I first lived at Port Neches, or Grigsby's Bluff. I came to Port Neches in November, 1874, when I was nine years old. I know where the magnolia trees are at Port Neches. There are some magnolia trees about a mile kind of northwest of what they used to call Grigsby's Bluff, and what they call the old Remley place. There was a fence, I judge about 75 or 100 yards east of those trees, which ran, I should judge, about 300 or 400 yards from the river south. That fence inclosed a field, and they had a little pasture from the house to the river, and had a fig orchard and some peach orchards like, and there was a dividing fence between the two. When I first saw that property there was a house, I should judge, about 30 or 40 yards east of this Remley dwelling, and there was a sawmill kind of a little northwest. There was a small house east of Mr. Remley's place, I judge about 30 yards. The field that I saw there was being cultivated all the time. It was cultivated sometimes by Mr. Remley; that is, he would hire help; and for two years he rented it, and had renters to cultivate it, and once or twice we worked our sweet potatoes there in the field for him. He cultivated that field lying east and south of those magnolia trees; that old house was there—I don't know who it belonged to. Mr. Remley had potatoes and such stuff stored in it. He was using it at the time I was around there. The last time I knew anybody to cultivate that field was about I think 1880 or 1881. The fence around that place was sawed cypress posts and plank fence; some cypress and some pine. I removed part of that fence. I was hired by Mrs. Keith. I was working for Mrs. Keith, and she was short of fencing, and I suggested to her to see Mr. Remley, as I didn't think he was going to cultivate all his field, and maybe she could buy part of his fence. I suppose she bought the fence. as she told me to go and remove part of it. She went out to see Mr. Remley, and then told me to remove part of the fence. I tore the fence down.

"At the time I tore the fence down it was in pretty good condition—almost stock proof. Once there was a plank torn off, once in a hundred yards or so. I think there were five or six planks on the fence; it was regular height, about 4 or 5 feet. It was a good substantial fence. From the time I moved up there until I moved the fence, Mr. Remley was using that property all the time; he was having it cultivated and raising a crop on it. As well as I remember, he cultivated it from 1875 up to about 1880 or 1881. I mean he was cultivating it every year, and there were several times I was around while he was using the house."

[3, 4] We think the evidence shows that Remley was placed in charge of the premises by Mrs. Johnson as her agent, and that he continued to rent and use the same in that capacity. Mrs. Brown says her mother left the place in his charge. He told Hemenway that he had charge of the place. It is true that he did not say for whom he had charge, but he did not claim possession for himself, and, as the other evidence showed that he took possession and had charge for Mrs. Johnson, the presumption is that he continued to so hold same, for the rule is well established that, when once a status is shown to exist, it is presumed to continue until the contrary is shown. The assignments are overruled.

[5, 6] Appellant's fourth proposition is that the evidence conclusively shows that plaintiffs abandoned the premises in 1872, never returned to same, or, after that date, made claim to same. This proposition is practically the same as its third proposition, which has been discussed and overruled. Appellant contends that, when plaintiffs left the premises in 1872, they did not leave same in charge of Remley, but that, at most, they got him to look after their house and furniture. January 28, 1861, by reason of the Civil War, the statutes of limitation were suspended and ceased to run, and thus they remained until March 30, 1870. If plaintiffs abandoned their claim to the premises in question when they left them in 1872, and thereafter did not assert any claim thereto, then title by limitation did not mature, for the 10 years would

not have been perfected until March 30, 1875, but, under appropriate instructions, the court submitted to the jury the question of whether plaintiffs were in possession, occupying, using, and enjoying the premises for 10 successive years between 1856 and September 1, 1879, asserting their right to and claiming same, which the jury answered in the affirmative. We think the evidence is ample to support the finding. As stated above, we think the evidence shows that when Mrs. Johnson left the place in 1872, she left same in charge of Remley, who continuously held and used same as her agent and representative until 1880. In order to create the relation of landlord and tenant, it is only necessary that the tenant take possession by the consent of the landlord. No other contractual relation is necessary, nor is the payment of rent or other consideration for the use of the premises necessary to give the occupant or user of the land the character of tenant. Word v. Droughett, 44 Tex. 371; Cochrane v. Faris, 18 Tex. 852.

What we have said disposes of appellant's fifth proposition.

[7] Appellant's sixth proposition is:

"The court erred in giving and submitting to the jury the plaintiff's special charge, which is as follows:

"Gentlemen of the Jury: You are instructed that a claim of right on the part of the possessor and claimant to land is just as necessary to enable such possessor and claimant to acquire title under the statutes of limitation as any other element. Acts of dominion and control over land by a claimant such as usually attend upon ownership are sufficient to constitute and evidence a claim of right."

Appellant urges that this charge is erroneous (1) because it is upon the weight of the evidence, and (2) it tells the jury what will constitute and evidence a claim of right, when the jury should be the judge of the facts upon such issue, and should be left to determine same.

The charge was proper, and the assignment is overruled. Houston Oil Company v. Ainsworth (Tex. Com. App.) 228 S. W. 186; Craig v. Cartwright, 65 Tex. 413, 424; Richards v. Smith, 67 Tex. 612, 4 S. W. 571; vol. 1, Ency. of Ev. 658.

[8, 9] By its seventh proposition, appellant insists that the court erred in permitting the witness Hemenway to testify, over appellant's objection, that Remley told him that he, Remley, had the Johnson place in charge, because the evidence was hearsay, immaterial, and irrelevant to any issue in the case.

The relation of landlord and tenant between Mrs. Johnson and Remley could be shown by the declarations of Remley, but the fact of his possession of the premises could not be so shown. Dunn v. Taylor, 102 Tex. 85, 113 S. W. 265; 24 Cyc. 893. Appellant takes the position that Remley was never in possession of the premises for Mrs.

Johnson, that she merely requested him to keep an oversight over her house and furniture, and insists that, it not being shown that Remley was in possession of the Johnson premises as the tenant of Mrs. Johnson, therefore the declaration of Remley was not admissible. We do not agree with the contention of appellant that it was not shown that Remley was in possession of the premises as the agent and representative of Mrs. Johnson. Mrs. Brown testified:

"When you asked me where mother went in 1872, well, she left the house furnished, and she left it in care of Mr. Remley; shut up the house, and went to Montgomery county. She went there because all her relatives were there —all that was left—her brothers and all died, but there was uncles and aunts and cousins up there, and she wanted to get back among the other people. I don't know what became of the house, or the furniture. I don't know a thing about it. I know that in 1872 she turned the place over to Mr. Remley."

There is nothing in the record disputing this testimony, and we think it establishes the fact that the place, not merely the house and the furniture, was left in the charge and possession of Remley. Remley's possession, as the agent of Mrs. Johnson, being shown, then his declaration in question was admissible as evidence, not only of his relationship to Mrs. Johnson, but also that the occupant of the place, Riggs, was holding the place under him for Mrs. Johnson. Dunn v. Taylor, 102 Tex. 85, 113 S. W. 265; Tuttle v. Turner, 28 Tex. 771; White v. San Antonio Water Works Co. (Tex. Civ. App.) 29 S. W. 256.

[10] Appellant's eighth proposition complains that the court erred in refusing to submit to the jury its special requested issue of five years' limitation after 1902 and before May 13, 1921.

Refusing the charge was not error. The record discloses that the tract of 735 acres, known as the Chas. O. Baird tract, is a narrow tract some 6,300 varas long and 664 varas wide—in other words, more than three miles long and about one-third of a mile wide —extending north and south, fronting the Neches river on the north. The Port Neches-Nederland shell road crosses the north end of this tract, leaving a considerable portion of it between the river and this road. The portion awarded appellees is in the northwest corner of the tract between the river and this road. It is shown that Baird exercised many acts of ownership over the 735-acre tract, such as granting right of way for railroad tracks, right of way for an irrigating canal, site for school house, right of way to Texas Company, an agreement for the opening of a street, renting portions of said tract for the cultivation of rice, and some for pasture purposes, etc. None of the land affected by these grants is on any part of the land awarded to appellees, but is situated entirely

on other portions of the 735-acre tract. The portion between the river and Port Neches-Nederland road was at one time fenced by Baird, but the evidence shows that said fence was maintained for only a very short time. In about the year 1912, persons who were working for a refinery company that was putting in a refinery at Port Neches, near this land, began to squat or put up small houses at various points on that portion of the 735-acre tract between the river and the shell road. No tenancy contracts were taken by Baird from these squatters until about 1914, and these were to small portions of from 50x50 feet to as much as one-half an acre, but these tracts are not described as being on any particular part of the land between the river and the road. As the portions held by these squatters, from whom contracts of tenancy were taken, are not shown certainly to have been located on any portion of the tract awarded to appellees, and, it being without dispute that each squatter, in his contract, was limited to a few feet, which is not definitely described or located, either by pleading or proof, therefore these limited possessions of the squatters would not start the statute of limitation to run against the whole tract awarded to appellees. Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 533, 124 S. W. 85.

[11] Furthermore, the record discloses that Baird bought the 735-acre tract of land March 28, 1898. The claim of appellees to that portion awarded them ripened by limitation into complete title prior to 1880, leaving no title thereto in those under whom Baird claims. So, when Baird bought the land, the tract awarded plaintiffs had, by limitation, been segregated from the rest of the 735-acre tract and the title thereto vested in appellees, as completely as if same had been conveyed by fee-simple title by its then owner. Moody v. Holcomb, 26 Texas, 719. That being true, Baird bought and took the tract with the segregation already long since accomplished. The placing of tenants in possession of other portions of the 735-acre tract would not amount to or be possession of the tract awarded to plaintiffs, and, in order for him to obtain title by limitation to. said portion awarded to plaintiffs, he would have had to take actual possession of same, and to have continuously occupied and used same for the full period of 5 years.

Appellant's ninth proposition asserts that Elizabeth C. Johnson, one of the plaintiffs in the suit, is shown by the evidence to be a non compos mentis, and had been so for years, and that because thereof she is not a party to the suit, and that she is not suing by next friend, and there is no one before the court as a proper person as plaintiff by whom judgment could be recovered for the said Elizabeth Johnson, and for that reason there is no proper party plaintiff by whom or through whom judgment could be recovered, and that therefore no judgment should have been rendered, and the trial court should have granted appellant's motion for a new trial.

[12, 13] The assignment is overruled. The objection that a party has no right to sue should be raised before judgment. It comes too late on motion for a new trial. Frazier v. Waco Building Association, 25 Tex. Civ. App. 476, 61 S. W. 134 (writ denied). Where the evidence during the trial discloses defect of parties plaintiff, the defendant should then object. It is too late to raise the question after verdict and judgment. 31 Cyc. 743; Young v. Stickney, 46 Or. 101, 79 Pac. 345. Furthermore, it also appears in the record that Mrs. Johnson had a contract with James Rachford, an attorney, to bring this suit, and that she signed said contract by making her mark. It also further appeared, as developed on the cross-examination of Mrs. Brown, one of her daughters and a plaintiff in the case, that Mrs. Johnson's depositions were taken, but which do not appear to have been offered in evidence by either party, and while the record discloses that she was 90 years of age at the time of the trial, and was an invalid in body and mind, still the question of her incapacity to know her rights or to claim them is one of fact, and, as the defendant did not raise the question, but proceeded to trial and judgment, it is now too late to do so.

[14-17] By its tenth proposition appellant submits that, as appellees moved away from the premises in question in 1872, and never returned to them, nor exercised any acts of ownership over them afterwards, until the filing of this suit, it should be presumed as a matter of law that, if they ever claimed the land, they had divested themselves of all claims and interest therein by conveyance or otherwise.

The assignment is overruled. No presumption of title in favor of Baird or those under whom he claims could be indulged that the title had passed out of appellees to them, because appellant showed a chain of title from the sovereignty into Baird, which completely accounted for his title to the land. The title of appellees, having been perfected and completed by limitation, vested in them full legal and equitable title to the land, and it could not be lost by abandonment. Besides, a grant or conveyance will not be presumed as a matter of law. The presumption, if indulged at all, is one of fact, and it is for the jury to determine the effect of the evidence in support of the presumption. Herndon v. Vick, 89 Tex. 469, 475, 35 S. W. 141. This question was not submitted to the jury, nor was it requested to be done.

The judgment should be affirmed, and it is so ordered.

Affirmed.