## CLARK et al. v. UNITED PRODUCTION CORPORATION et al.

### No. 5823.

Court of Civil Appeals of Texas. Texarkana.

Oct. 22, 1941.

Rehearing Denied Nov. 6, 1941.

Smith & Smith and R. C. Saunders, all of Corpus Christi, Rodgers & Rodgers, of Texarkana, and E. L. Dillard, of Waurika, Okl., for appellants.

Vinson, Elkins, Weems & Francis, Cecil N. Cook, and Thomas Fletcher, all of Houston, Carney & Carney, and Tom N. Cope, all of Atlanta, Bartlett & Patman, of Linden, C. C. Denman, of Nacogdoches, and E. C. Wellborn, of Henderson, for appellees.

HALL, Justice.

Appellees, plaintiffs below, filed this suit August 28, 1937, in the District Court of Cass County against appellants for title and possession of about 480 acres of land, a part of the John Collom Survey located in said county. They specially pleaded title under the 3, 5, 10 and 25 year statutes of limitation. The heirs of W. F. Cobb and his wife, Susan Cobb, their assignees and mineral lessees constitute the appellees here. Appellants, defendants below, are numerous, consisting, it seems, of every person who has ever asserted any claim to this land through the years, their heirs and legal representatives. Many of them disclaimed and others defaulted. A number answered by general denial and plea of not guilty, while the remainder claimed as heirs of John Collom, original patentee. All defendants below were represented by counsel either of their own choice or by appointment of the court.

The jury verdict was for appellees upon peremptory instructions of the court, and judgment was entered for them accordingly. Appellants prosecute an appeal to this court, and by numerous assignments of error attack the action of the trial court as being unsupported by the record. After careful examination of the record herein we have concluded that the judgment of the trial court must be affirmed upon the theory of limitation under the 5, 10 and 25 year statutes of limitation, R.C.S. Articles 5509, 5510, 5516, 5519 and 5519a, Vernon's Ann.Civ.St. arts. 5509, 5510, 5516, 5519, 5519a.

The following facts are undisputed. In 1849 W. F. Cobb and wife came from Tennessee and settled on a part of the land here in controversy. In 1851 the State issued to the heirs of John Collom a patent which included within its boundaries this land. In 1854 J. W. Fort conveyed to Charles Ames and W. F. Cobb each an undivided ½ of the North ½ of the Collom Survey and on September 14, 1861, Ames and Cobb, by exchange of deeds, partitioned the North ½ of said survey, Cobb receiving the South part of said North ½, a part of which is the land in controversy. These deeds were duly placed of record. W. F. Cobb lived on this land with his family from 1849 until 1879. From this latter date until about 1894, Cobb, through tenants, used and occupied said land. From 1894 until 1937, the date this suit was filed, either W. F. Cobb, his heirs, or the tenants and representatives occupied, used and exercised dominion over this land. During the 30 years W. F. Cobb and his family actually lived upon this land he built two mills or gins thereon—a horse-gin first, and a water-mill later. Power for the water-mill was furnished by two mill-ponds connected by a canal constructed upon this land by W. F. Cobb. He operated a country store on this land where a post office and voting box were established. A little country school was also maintained by him. Some five or six tenant houses were built by W. F. Cobb on said land, and all the cultivated portion, variously estimated at from 50 to

300 acres, was under a rail fence made from timber off the place. At different times the Cobbs sold timber off this place. The land here in controversy was known throughout that community as the Cobb place, often referred to as the Cobb plantation. It was the center of the community activities. W. F. Cobb was known as a community builder. From 1851, the date the land was patented to the heirs of John Collom, until 1937, when this suit was filed, a span of 86 years, all taxes against same were paid either by W. F. Cobb, his heirs or their assignees. No taxes against this land have been paid by appellants, neither have they nor those under whom they claim ever been in possession of the land here involved. Thus, it is indisputably shown that appellees and their predecessors in title have actually and visibly appropriated this land "commenced and continued under a claim of right inconsistent with and hostile to the claim of another" (Article 5515, R.C.S.). Their possession of this land has not only been adverse, but it has been exclusive and continuous, so much so that they in 1923 maintained an action in the District Court of Cass County in trespass to try title against the unknown heirs of John Collom which resulted in judgment for appellees for title and possession of the land. And while that judgment is believed to fully support the judgment of the court below, we are not, however, basing our holding in this case upon same, but, as before stated, upon limitation as shown by the uncontroverted evidence. In our opinion the Articles of the Revised Statutes cited above, when applied to the undisputed facts in this record, constitute sufficient authority for an affirmance of the judgment of the trial court. However, it is thought that the following authorities are also in point: Richards v. Smith, 67 Tex. 610, 4 S.W. 571; Free v. Owen, 131 Tex. 281, 113 S.W.2d 1221; W. T. Carter & Bro. v. Holmes, 131 Tex. 365, 113 S.W.2d 1225; Hickman v. Ferguson, Tex.Civ.App., 164 S.W. 1085, writ refused.

Our conclusions expressed above render a discussion of the other propositions brought forward unnecessary.

The judgment of the trial court is in all things affirmed.