**MONROE et al. v. LYONS et al.**

**No. 6161.**

Court of Civil Appeals of Texas. Texarkana.

May 10, 1945.

Rehearing Denied May 24, 1945.

 

Jones & Jones, of Mineola, F. B. Caudle, of Mt. Vernon, and W. H. Barnes, of Terrell, for appellants.

Jones & Jones, of Marshall, W. W. Harris, of Quitman, and William Greene, of Shreveport, La., for appellees.

HARVEY, Justice.

C. H. Lyons and others (appellees) brought suit against Mary Monroe and others (appellants) in the District Court of Wood County, Texas, in trespass to try title to Lot No. 2 in Block No. 31, a part of the George Brewer Survey, of the town of Hawkins. The plaintiffs specially pleaded the ten year statute of limitation, and also sought to establish title under their trespass count as claimants under one William Smith, named as grantee of such lot in a deed from the Texas & Pacific Railway Company dated February 23, 1876. The defendants entered a general denial and a plea of not guilty. Upon issues submitted to them, the jury found that the predecessor in title of the plaintiffs, who went by the name of Smith Clayton, was not the William Smith named in the deed, but determined that he had acquired title under the ten year statute of limitation (Article 5510, Vernon's R.C.S. of Texas 1936). From a judgment in favor of such plaintiffs based upon the verdict, the defendants have prosecuted this appeal.

The principal point presented by appellants is that the evidence adduced upon the trial of the case was insufficient as a matter of law to establish that the appellees had acquired title to the lot in controversy under the ten year statute of limitation, in that it was not shown that Smith Clayton, under whom they asserted title, had claimed the lot as his own and adversely to the real owner; that the lot itself was not identified as the one upon which it was contended he had lived; and that no definite ten year period of occupancy by him had been shown.

The essential elements upon which a title by limitation under the ten year statute can be perfected are use, claim and possession. Each of these must be established by the proof adduced upon the trial of the case, and if either one is lacking, the asserted title by limitation fails. Thus, one might have used, cultivated or enjoyed land or premises for the statutory period, but without an adverse claim hostile to the real owner, and in such case natural-

ly there is no basis established for a limitation title. Or, one might have claimed land adversely for ever so long, but without use or enjoyment of it as contemplated by the statute the same situation exists. These principles are quite elementary and are only referred to as a predicate for further statements herein. In this case, the jury found, with support in the evidence, that William Smith Clayton was in peaceable and adverse possession of the lot in question for a ten year period prior to the filing of the suit. Inasmuch as there is testimony in the record to justify a finding of ten years' possession subsequent to February 23, 1876, when the Texas & Pacific Railway Company sold the lot, we deem it unnecessary to discuss the question of whether or not there was constructive possession of the lot by the said Railway Company during the time prior to 1876 that it was testified William Smith Clayton was occupying the lot. Appellants take the position that there is an entire absence of adverse claim on the part of William Smith Clayton to the premises that he occupied, if it be assumed that he was in possession of the lot and house located upon it. We think it has become established in this state beyond cavil that one in actual possession of land for the statutory period of ten years, in the absence of any evidence to explain his possession, or to show that it was disputed, or that the alleged fact of the possession was not true, is presumptively the claimant of the title. In other words, a constructive claim is imputed by reason of possession under such circumstances. Angell on Limitation, Chapter 31, Sec. 11; 2 Tex.Jur. Sec. 57. A few short quotations from the adjudicated cases are considered proper: "Possession of premises usually carries with it the presumption of a claim of title, and in that sense operates as notice to the true owner that his title is disputed." Boy v. McDowell, Tex.Civ.App., 207 S.W. 937, 938. "But in presumption of law, an actual possession must be regarded as adverse to all other titles or claims than that of the possessor, or such as have been recognized by him. And whenever a party permits such possession to be maintained, he does so at his peril." Gillespie v. Jones, 26 Tex. 343. The Supreme Court of Texas, in the case of Baker v. Fogle, 110 Tex. 301, 217 S.W. 141, 219 S.W. 450, quotes from an opinion by Chief Justice Phillips in Roseborough v. Cook, 108 Tex. 364, 194 S.W. 131, 132, as follows:

"The title by limitation ripens, primarily, only because, in such manner and for such period of time as the different statutes require, notice is given of the hostile claim. Under the three years statute, it is afforded by possession under title or color of title. Under the ten years statute, simply by possession."

Judge Stayton in the case of Richards v. Smith, 67 Tex. 610, 4 S.W. 571, 573, uses this language:

"When the acts done upon a tract of land are such as to give unequivocal notice to all persons of a claim to it adverse to the claims of all others, and this is accompanied by an actual possession, exclusive in its character, then limitation will run in favor of the persons so asserting adverse claim, and enjoying an exclusive possession from the time such exclusive occupancy began, whether the land be inclosed or not."

See also Stewart v. McKee, Tex.Civ. App., 150 S.W.2d 415; McKee v. Stewart, 139 Tex. 260, 162 S.W.2d 948; Young v. City of Lubbock, Tex.Civ.App., 130 S.W. 2d 418.

In the case under consideration there was testimony to the effect that Smith Clayton entered upon the small town lot, 50 x115 feet, about the year 1873, and resided there until 1886 or 1887; that he and his family occupied the house upon the place as their home during this period, and a small fenced garden was maintained in the rear of the house; that there was a well near the line separating the lot upon which he resided and one occupied by Dick Wright immediately west of his place. It was testified that due to controversies between the wife of Clayton and the wife of Wright, Smith Clayton had the lot surveyed. Surely, such occupancy and use, together with the natural and normal enjoyment of the space surrounding the situs of the dwelling, on a small lot of the size of the one in question, constitutes such use and enjoyment as is contemplated under the statute. This character of use and enjoyment was what the lot was best adapted to and for which it was best suited under the circumstances. It is inconceivable that one could maintain his homestead on a lot of such size, with the use and enjoyment necessarily associated with such residence, without being in actual possession of the entire lot to its limits as designated on the town plat.

It is urged by appellants that since the lot was not fenced and the extent or

limits of the claim of the occupant was not shown, the title of the limitation claimant was not established; that at most all that could be recovered by him would be the exact ground covered by the house itself, and since such area was not definitely defined by the evidence the appellees cannot recover at all. We are of the opinion that the use of a town lot the size here involved for the purpose of maintaining a residence for oneself and family, a use for which it was adapted, extends, constructively, to the limits of the lot as shown by the plat of the townsite. The fallacy of a holding to the contrary is pointed out in the case of Nativel v. Raymond, Tex.Civ.App., 59 S.W. 311, in which the impracticability of limiting a claimant under the ten year statute to the portion of land actually used by him is discussed. In this case, following the reasoning of the last mentioned one, we can suppose a situation in which the residence on the 50-foot lot was forty feet in width and located ten feet inside the front line of the lot. Should we say that the five feet on each side of the house and the ten feet in front were not in actual possession of the one using the house? The paths of ingress and egress and the space surrounding the residence are essential and necessary, and incidental to the enjoyment of the dwelling itself.

■■■■ Appellants have a number of assignments of error directed to the action of the trial court in admitting in evidence certain tax records showing the assessment of taxes to and payment by Smith Clayton and Richard Wright on Lots 2 and 3, Block No. 30, when it was shown by the testimony of the witnesses that they actually occupied Lots 2 and 3, each, respectively, in Block No. 31. The manifest purpose of these records introduced by the plaintiffs below was the bearing they might have in showing the claim of Smith Clayton to the lot in controversy, as well as their relation to his identity. It is true, as contended by appellants, that ordinarily when a party to a suit introduces a written instrument he will not be heard to deny its import. Otherwise, so to speak, it would be permitting one to build a straw man for the purpose of bowling him over. Under the peculiar facts and circumstances of this case, however, we think the records were admissible. The Texas & Pacific Railway Company in 1873 conveyed to Wright Lot 3, Block 31. This lot he occupied from 1874 until 1886 or 1887, and Clayton Smith during this period occupied the adjoining lot to the east, which was Lot 2, Block 31. There is no intimation in the record that either of them ever lived on lots in Block 30; the Texas & Pacific Railway Company rendered all of Block 30 during the years that Wright and Smith were residing on Block 31; during this period, Lots 2 and 3 of Block 31 were on the unrendered property tax rolls. In 1874 Lot 1, Block 31, of the town of Hawkins was assessed to Dick Wright; in 1878 taxes were assessed against him on Lot 3, Block 30; for some five years after this date taxes on the same lot were assessed against him. In 1883, Lot 3, Block 31 was rendered as unknown, and the records of the tax assessor had a pencil notation that "Dick Wright paid on lot 3." In 1886 Lot 3, Block 31, was listed as unrendered, but the records show "Lot 3, paid by Dick Wright." Later, Lot 3, Block 31, was assessed to Dick Wright. From 1880 to 1884 taxes on Lot 2, Block 30, were assessed against Smith Clayton. The matters dealt with happened some sixty-five to seventy years ago. In recognition of the difficulty of obtaining testimony to establish facts in issue after the lapse of such a period of time, rules of evidence are relaxed in some degree in order that one, groping in the mists of an almost forgotten past, is permitted to gather such fragments of information as may be obtainable to the end that a more or less completed picture of things as they were might be pieced together. The facts enumerated are strongly persuasive that Smith Clayton claimed a lot in Hawkins and in rendering it for taxes, like Dick Wright, he got the block number of his lot confused. We think the evidence in question was admissible for whatever weight the jury saw fit to give it.

Other assignments presented by appellants have been considered and are not deemed sufficient to require a reversal of this cause.

The judgment of the trial court is affirmed.